627 P.2d 1097

James W. BIRD, A.I.A.,
Plaintiff/Appellant,

v.

Samuel ROTHMAN, an individual, James M. Elliott, an individual, and the Law Offices of Samuel Rothman and James M. Elliott, a partnership and Does 1 through 10, Defendants/Appellees.

No. 2 CA–CIV 3763.

Court of Appeals of Arizona,
Division 2.

March 19, 1981.

Rehearing Denied April 15, 1981.

Review Denied May 5, 1981.

**600**

Maurer, Higginbotham & Harris by Charles D. Maurer, Jr., San Francisco, Cal., for plaintiff/appellant.

Fish, Briney, Duffield, Miller, Young & Adamson, P. C. by Richard Briney, Tucson, for defendants/appellees.

Peabody, Rivlin, Lambert & Meyers by Lewis A. Rivlin, Collister Johnson, Jr. and Robert J. Miller, Washington, D.C., for amici curiae American Consulting Engineer's Council and Arizona Consulting Engineer's Ass'n.

Carmichael, McClue & Powell, P. C. by J. Clayton Berger, Phoenix, for amici curiae Arizona Soc. of Architects, Inc. and American Institute of Architects.

## OPINION

HATHAWAY, Chief Judge.

In this case we are asked to review the trial court's actions in a malicious prosecution, abuse of process, and negligence suit which terminated in favor of appellees, two Tucson attorneys, on all three counts. Appellant challenges summary judgment on the abuse of process and negligence counts, and a directed verdict for appellees on the malicious prosecution count at trial.

In February 1976, appellees, representing a woman who was injured at Amado Greyhound Park when the grandstand glass was shattered by a rock, filed a tort action which initially named only the park as defendant. After additional investigation, an amended complaint was filed adding appellant Bird as a defendant. Appellant is an architect who specializes in the design of race tracks. He designed Amado Greyhound Park in 1963. After a motion for more definite statement by appellant and additional amended complaints were filed, appellant filed a motion for summary judgment. The motion was granted and judgment was entered dismissing appellant from the suit on September 29, 1977.

On May 1, 1978, appellant filed this action, alleging that appellees acted maliciously and without probable cause in bringing the prior action against him, that they were negligent in failing to investigate the facts and the law before suit, and that they were guilty of abuse of process. Appellees' motion for summary judgment on the negligence and abuse of process counts was granted on July 19, 1979.[1] The remaining malicious prosecution count was tried to a jury, and after both parties had rested, a directed verdict was entered for appellees.

---

1. The Hon. Gilbert Veliz ruled on the motion for summary judgment, while the Hon. John P. Collins (former judge) sat at trial.

Appellant appeals from a final judgment in favor of appellees on all three counts. We will address the issues disposed of by summary judgment first.

## NEGLIGENCE

Appellant states the negligence issue as follows: "Are attorneys in Arizona immune from liability to adverse parties for negligently instituting or continuing groundless lawsuits?" The basic issue is whether an attorney owes a duty to a party opposing his client in an action arising out of his professional duties in the absence of fraud or collusion. Appellant contends that public policy compels a conclusion that attorneys should be liable in simple negligence to an adverse party for filing a groundless lawsuit. They argue such third party liability exists in other professions, and that there are no reasons why attorneys should receive preferential treatment by the courts.

The issue of an attorney's liability to an adverse party in negligence was recently addressed in *Lewis v. Swenson*, 126 Ariz. 561, 617 P.2d 69 (App.1980). There, the court applied our earlier opinion in *Fickett v. Superior Court*, 27 Ariz.App. 793, 558 P.2d 988 (1976), in holding that an attorney was not liable for negligence for failing to warn an expert witness not to mention insurance during his testimony. The adverse party had brought an action against the defendant attorney alleging damages as a result of the mistrial which was granted after insurance was mentioned while defendant was examining the expert witness. The court applied the test adopted in *Fickett* to resolve the issue of whether the attorney owed a duty to the adverse party under the circumstances:

"... the better view is that the determination of whether, in a specific case, the attorney will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of

harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injuries suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm. *Biakanja v. Irving*, 49 Cal.2d 647, 320 P.2d 16 (1958); (other citations omitted)." 27 Ariz.App. at 795, 558 P.2d at 990.[2]

As cited in the above quotation, the *Biakanja* case in California was the first to apply the balancing concept to determining liability in negligence to a third party. The California Court of Appeals was called upon to apply the test to the same issue as the one presently before us in *Norton v. Hines*, 49 Cal.App.3d 917, 123 Cal.Rptr. 237 (1975). We have no hesitancy in agreeing with the conclusion in *Norton*, and the overwhelming majority view in other jurisdictions, that malicious prosecution is the proper cause of action under the circumstances of this case, and that negligence is an improper standard upon which to base liability of an attorney to an adverse party. The balance between freedom of access to the courts and compensating a defendant from unwarranted prosecution and discouraging unmeritorious litigation must be struck in favor of allowing the attorney, as an officer of the court, the freedom to present his case as vigorously as the rules of law and professional ethics will permit. *See also, Weaver v. Superior Court*, 95 Cal.App.3d 166, 156 Cal.Rptr. 745 (1979); *Lyddon v. Shaw*, 56 Ill.App.3d 815, 14 Ill.Dec. 489, 372 N.E.2d 685 (1978); *Petrou v. Hale*, 43 N.C.App. 655, 260 S.E.2d 130 (1979); *Brody v. Ruby*, 267 N.W.2d 902 (Iowa 1978). Our courts must be held open to litigating parties without fear of subsequent prosecution for calling upon the court to decide a contested issue. The lawyer's role in this process is unlike that of other professionals. His relationship with the opposing party is by its very nature adverse, not mutually beneficial. The party who is forced to defend a groundless lawsuit may institute disciplinary proceedings against

---

2. *See* Note, 19 Ariz.L.Rev. 653 (1977).

the offending lawyer, as well as bringing a malicious prosecution action.

Since we hold that there can be no liability in negligence for an attorney who allegedly brings a groundless suit against another party, the summary judgment on this count was properly granted.

## ABUSE OF PROCESS

■ The gist of appellant's abuse of process claim is that there was some evidence that appellees brought appellant into the underlying lawsuit in order to force a settlement. Appellant contends that instituting an action to force several defendants to pool their funds and pay plaintiff his demand rather than undergo the expense of trial is evidence of an ulterior, improper purpose precluding summary judgment on this count.

The essential elements of the tort of abuse of process are an ulterior purpose *and* a wilful act in the use of judicial process not proper in the regular conduct of the proceeding. *Joseph v. Markovitz*, 27 Ariz.App. 122, 551 P.2d 571 (1976); *Rondelli v. County of Pima*, 120 Ariz. 483, 586 P.2d 1295 (App. 1978). Even assuming a factual issue exists in regard to an ulterior purpose, there was no evidence of subsequent misuse of process after it was lawfully issued. An ulterior purpose alone cannot constitute abuse of process. There was no proof of an improper use of judicial process here, as the purpose of settlement is includable in the goals of proper process. *Bickel v. Mackie*, 447 F.Supp. 1376 (N.D.Iowa 1978), aff'd 590 F.2d 341 (8th Cir. 1978); *Martin v. Trevino*, 578 S.W.2d 763 (Tex.Civ.App.1978); *Petrou v. Hale*, supra; *Brody v. Ruby*, supra. The summary judgment on the abuse of process count was properly granted.

## MALICIOUS PROSECUTION

■ In determining the propriety of a directed verdict in a malicious prosecution case, the evidence and all inferences therefrom must be viewed in the light most favorable to the opposing party. *LaSalle National Bank v. 222 East Chestnut Street Corp.*, 353 F.2d 680 (7th Cir. 1965), cert. den.

384 U.S. 938, 86 S.Ct. 1460, 16 L.Ed.2d 539 (1966). After three days of testimony, the trial court granted a directed verdict for appellees on this count because it concluded as a matter of law that probable cause existed to bring the underlying action against appellant. Our review of the record indicates that the trial judge properly understood his role in determining probable cause, and that he correctly applied the applicable law to the facts before him.

■ The elements of malicious prosecution include (1) the institution of a proceeding, (2) actuated by malice, (3) without probable cause by the defendant in this action, (4) which terminated in the plaintiff's favor, and (5) caused him damages. The failure to establish lack of probable cause is a complete defense. *Carroll v. Kalar*, 112 Ariz. 595, 545 P.2d 411 (1976); *Cullison v. City of Peoria*, 120 Ariz. 165, 584 P.2d 1156 (1978). Whether the facts in a case are sufficient to constitute probable cause is a question of law for the court to be determined by a reasonable person test: Upon the appearances presented to the defendant, would a reasonably prudent person have instituted or continued the proceeding? *Carroll v. Kalar*, supra; *McClinton v. Rice*, 76 Ariz. 358, 265 P.2d 425 (1953).

The proper role of the trial judge in determining whether probable cause existed created much confusion below. Appellant contended there and on appeal that based on the facts in evidence, the jury was entitled to decide if appellees honestly believed in their case and whether they conducted a reasonable investigation of the facts and the law before filing suit. Then, and only then, appellant argues, can the court decide the issue of probable cause. Appellant offered into evidence the opinions of two Arizona attorneys, who had reviewed appellees' files in the underlying action, as to whether appellees' investigation and research were reasonable. The trial court refused to admit such opinion evidence from either party. Appellant argues that only qualified attorneys, not the trial court, could determine if appellees' efforts were reasonable. Finally, appellant contends that the issue of malice should have gone to the jury.

These arguments ignore what has been described as the "well developed and clear" law in this state as set forth in *Carroll v. Kalar*, supra. All issues of a party's reasonable belief and prudence in bringing an action are to be decided by the court. The only function of the jury in the determination of probable cause is to determine the actual facts of what the prosecuting party or attorneys performed in the way of investigation and research. The record herein clearly shows no conflict as to what research and investigation appellees had undertaken before bringing appellant into the lawsuit. The jury, then, had no role in the determination of probable cause. *Murphy v. Russell*, 40 Ariz. 109, 9 P.2d 1020 (1932), cited by appellant, is entirely consistent with this conclusion. The methods proposed in that case to submit a malicious prosecution probable cause issue to the jury apply only if the underlying facts regarding the investigation and preparedness of the prosecuting party are in conflict.

> "Whether a given state of facts constitutes probable cause is always a question of law to be determined by the court, and it cannot relieve itself of this burden by casting it upon the jury. (citations omitted) The only function of the jury in this respect is to determine what the actual facts were. If, therefore, taking the evidence in the strongest manner in favor of plaintiff, the court is of the opinion that as a matter of law the facts so proved constitute probable cause for the prosecution, it is its duty to instruct the jury to return a verdict in favor of the defendant. (citations omitted) If, however, the evidence is conflicting, so that on one conclusion as to the facts drawn therefrom probable cause exists, while from another it does not, it is then for the jury to determine the true state of facts and to apply the law as laid down by the court to those facts. (citations omitted)." 40 Ariz. at 112, 9 P.2d at 1021.

In accordance with this rule, the expression of opinions by other attorneys as to whether reasonable and prudent persons would have instituted or continued the proceeding are wholly immaterial to the decision in the case and were correctly not admitted below. *Carroll v. Kalar*, supra.

The evidence before the trial court showed without contradiction that appellees had probable cause to bring the underlying suit against appellant. Mr. Rothman testified he spent between 25 to 30 hours researching and investigating various theories of how the accident could have occurred before filing suit, and knew that Mr. Elliott had spent a similar amount of time in the case. The attorneys were especially concerned with the design and materials used in the construction of the grandstand, and had researched architect's liability for failing to provide a safe place for spectators. They were also concerned with the possibility that an "empty chair defense" would be employed by the other defendants, blaming the accident on a party not brought into the action. Mr. Rothman contacted at least one architect regarding proper standards of care before the suit was filed. Mr. Elliott testified that based on statements from witnesses to the accident, he felt they could proceed on a legal theory that would allow them to present lay testimony as to a substantial safety hazard at the track, and not to rely on expert testimony for their suit against appellant.

Since the issue of probable cause was decided in appellees' favor, and probable cause constitutes a complete defense to the action, there was no need to submit the issue of malice to the jury.

In summary, despite appellant's arguments that negligence suits, such as the underlying suit in this action, against architects and engineers have a significant impact on malpractice liability insurance rates and serve to impugn the reputation of conscientious professionals, we are persuaded that in the absence of proof of malicious prosecution on the part of the injured party or his attorney, the interest of freedom of access to our courts compels the conclusions we have reached. The record supports the trial court's finding of probable cause in the malicious prosecution action, and the negli-

gence and abuse of process counts were properly dismissed as a matter of law.

Affirmed.

HOWARD and BIRDSALL, JJ., concur.