842 P.2d 1303

Ronald SMITH, on behalf of himself and the marital community of Ronald Smith and Janice Smith, Plaintiff-Appellee,

v.

Anthony R. LUCIA and Treon, Strick, Lucia & Aguirre, P.A., Defendants–Appellants.

No. 1 CA–CV 90–323.

Court of Appeals of Arizona, Division 1, Department C.

April 30, 1992.

Review Denied Jan. 12, 1993.*

* Martone, J., of the Supreme Court, voted to grant review.

Charles A. Filler, Scottsdale, for plaintiff-appellee.

Jones, Skelton & Hochuli by Larry J. Cohen, David C. Lewis, Phoenix, for defendants-appellants.

## OPINION

TOCI, Judge.

This is an appeal from a jury verdict against Attorney Anthony Lucia, the defendant in this malicious prosecution action.[1] The underlying civil suit arose out of an incident in which Lucia's client, Richard Bush, struck the side of a swimming pool while diving from a diving board. Lucia filed suit on behalf of Bush against a number of former owners of the premises, including Ronald Smith, on the theory that one of them either created or concealed a dangerous condition on the premises. Four months after Smith had been served, Lucia concluded that Smith probably did not install or modify the diving board while he

owned the premises. Lucia offered to dismiss. Smith insisted that Bush pay Smith's attorney's fees. Bush, however, refused to agree to Smith's demand. As a result, Lucia's efforts to voluntarily dismiss Smith from the suit failed.

Two years later, Smith obtained a summary judgment against Bush. Smith then filed this action against Lucia for malicious prosecution. At the close of evidence in the malicious prosecution trial, the court instructed the jury that, as a matter of law, Lucia did not have probable cause to file the personal injury action against Smith.

We hold that Anthony Lucia acted with probable cause and reverse the judgment of the trial court. Because we reverse, we do not consider the remaining contentions raised by either party.

## FACTUAL AND PROCEDURAL HISTORY

The parties do not dispute the following essential facts. Richard Bush fractured his jaw and shoulder when he was "thrown" into the side of the swimming pool while diving from a diving board on premises rented from James Ackerman.

Bush retained Anthony Lucia, a lawyer experienced in swimming pool cases, to represent him. Lucia hired an expert who examined the pool and diving board. The expert concluded that the board was too large for the original mountings and that someone had drilled additional holes into the board to make it fit the pedestal and spring. Because the coil spring under the board was too powerful for the size of the pool, a diver striking the board off-center could be thrown against the side of the pool.

The expert was of the opinion that the oversized board and powerful spring assembly, combined with the narrow pool, created a dangerous condition that violated standards set by the National Pool and Spa Institute. He concluded that Bush had a

---

**1.** The term "malicious prosecution" is used here because it was used in the trial court. The term technically applies to the wrongful use of criminal proceedings. Here, the action is properly described as one for the "wrongful institution of civil proceedings." *See* Restatement (Second) of Torts ("Restatement"), Ch. 30 (1977).

good claim against the manufacturer of the board and whoever had installed or altered the board assembly.

Lucia thought it likely that the current owner or a former owner had installed the oversized board and spring. A professional installer would probably not "jimmy" an oversized diving board to fit an existing installation. However, from experience Lucia knew that the manufacturer of the board would attempt to escape liability by claiming one of the former owners had modified the product.

Lawyers in Lucia's office who researched the issue concluded that a former owner had premises liability for an undisclosed dangerous condition or "latent defect" that existed at the time of sale. Lucia thought a latent-defect case against the former owners was weak. However, he believed he had a strong negligence action against the owner or any former owner who installed the oversized board or coil spring. Case law from other jurisdictions supported this view.

Lucia filed two actions in November, 1983. The first suit was against Aqua Slide and Dive (Aqua Slide), the manufacturer of the board, coil and spring, Paddock Pools (Paddock), the pool builder, James Ackerman, the owner of the residence and pool, and the city and county.[2] In the second action, Lucia sued some of the former owners, including Ronald Smith, who had owned the property approximately eight years before. Although Lucia thought Ackerman and Aqua Slide were most likely to be liable, Lucia joined Smith as a defendant in the second action for several reasons. First, the expert said the board was installed during the period that coincided with the time during which Smith owned the premises. Second, Smith incon-sistently answered Lucia's investigator's questions relating to when he owned the premises. Last, Lucia wanted to prevent Aqua Slide and Ackerman from asserting an "empty chair" defense; that is, a defense that an owner not a party to the action altered the board.

Lucia did not immediately serve the former owners in the second action with process. He hoped that the separate action against Aqua Slide and Paddock would recompense his client. If so, it would not be necessary to determine who among the former homeowners installed or modified the diving board assembly. However, Aqua Slide filed bankruptcy and Ackerman moved for summary judgment against Bush, contending that the diving board assembly was installed by a former owner. Concerned, Lucia served all of the former owners named in the second action except one, who could not be found.

Lucia knew there was a limited amount of insurance proceeds that would be available to his client from the Aqua Slide bankruptcy. Also, after the denial of Ackerman's motion for summary judgment, Lucia learned that Ackerman's insurer would make Bush a settlement offer. Consequently, Lucia decided to dismiss against the former owners of the premises who had answered. All save Smith accepted. Smith and his attorney decided to reject a voluntary dismissal unless Bush first paid Smith's attorney's fees and costs.[3] Bush refused because he had no money to pay the fees and costs.

Lucia sent Smith's attorney a letter on February 13, 1985, which confirmed Lucia's verbal dismissal offer of February 1, 1985. Smith's attorney refers to this letter as the "best guess" letter.[4] Smith's attorney

---

2. The city and the county were never served with process.

3. At the time of Lucia's first offer to dismiss on February 1, 1985, Smith had incurred approximately $1,100 in attorney's fees.

4. "This will confirm your recent conversations with me and my legal assistant, Lois Allton. We have indicated to you that we were forced to bring this action against your client because of the following circumstances. Our client was injured in a dive from a diving board into a pool located at 4919 N. 85th Street. The accident occurred in 1982. We originally brought action against the present owner of the property, as well as the manufacturer of the diving board and the contractor for the pool. The owner of the property told us that he was not the person who installed the diving board.

The diving board is extremely dangerous given the size of the pool, and therefore, who ever [sic] installed the diving board is liable to my

again verbally refused the offer to dismiss unless Bush paid Smith's attorney's fees and costs. As before, Smith's attorney made no demand for any specific sum of attorney's fees or costs.

There was no activity in the lawsuit for almost a year and a half after Lucia's letter of February 13, 1985. On June 5, 1986, the president of Aqua Slide testified at a deposition in the first lawsuit that the diving board was manufactured in "approximately 1975 or 1976." This was after Smith owned the property. However, this testimony was in conflict with Smith's earlier statements made when Lucia's investigator showed Smith photos depicting the diving board that injured Bush. Smith identified the board and said that it existed on the premises when he bought the property in the early 1970s. In August, 1986, Lucia again wrote to Smith's lawyer requesting a dismissal. Although Smith's attorney answered that he would discuss the matter with his client, he gave no written response to Lucia's offer to dismiss.

In September of 1986, an attorney in Lucia's office asked for Smith's signature on an affidavit to be filed with Bush's memorandum in answer to Paddock's motion for summary judgment in the first lawsuit.[5] Because Smith's attorney refused, an attorney in Lucia's office deposed Smith. The deposition lasted twenty minutes. The attorney elicited only the testimony necessary to controvert Paddock's motion for summary judgment. Lucia also propounded two additional interrogatories to Smith, one consisting of seven sub-parts directed to Smith's insurance coverage and one "boilerplate" interrogatory requesting the names of experts and trial witnesses.

Lucia's firm sent three additional letters proposing a dismissal, but Smith and his attorney would not relent. Lucia then filed a motion for voluntary dismissal. *See* Ariz. R.Civ.P. 41(a). Smith's attorney responded, objecting to dismissal unless the order provided for Bush's payment of attorney's fees and costs. Lucia withdrew the motion.

In February of 1987, Smith's attorney moved for summary judgment. Although Lucia opposed the motion, the court granted it March 13, 1987. Smith did not request attorney's fees or costs.

Smith then filed this action against Attorney Lucia personally. Counsel tried the case before a jury. At the close of evidence, the court ruled, as a matter of law, that Lucia instituted the underlying civil action without probable cause and that Smith had secured a favorable result. The jury returned a verdict in Smith's favor, awarding compensatory damages of $40,000 and punitive damages of $20,000. The court entered judgment on February 27,

---

client. We have now also filed against prior owners of the house seeking to determine who installed the diving board. No one, including your client, admits to having installed the diving board. Therefore, your client as well as all of the other prior owners would be required to defend this case through trial so that the jury can decide which of the prior owners installed the diving board.

Both I and Lois indicated to you that we are willing to dismiss this case against your client. *We have reached this decision because it is our best guess that the diving board was not installed by your client* and we would prefer to simplify the litigation rather than involve a large number of parties. *However, it is certainly possible the jury would disagree with us and conclude that your client is the party who installed the diving board.*

You have indicated to us that the case will not be dismissed unless we pay your client's fees and costs. Both your fees and costs should be minimal at this point, but will increase substantially soon if you stay in. We do not feel that you have any legitimate claim for fees in this case.

I suggest you discuss this with your client immediately. If he desires to be out of this case, that can be accomplished at this time and he will not incur any additional fees. Otherwise, there will be extensive discovery in the near future and his fees will increase dramatically.

Please contact me as soon as he decides. If he decides to stay in we will answer the interrogatories within ten (10) days from your contacting us."
(Emphasis added.)

5. Before Bush filed suit against Smith, Smith told Lucia's investigator that Smith's predecessor in interest, Dorsa Day, had told Smith that Paddock had installed the spring and diving board. Although Smith's testimony was clearly hearsay, Lucia hoped to have it admitted under Ariz.R.Evid. 803(24) in opposition to Paddock's motion for summary judgment.

1990. Lucia filed a motion for judgment notwithstanding the verdict/motion for new trial, which the court denied. Lucia filed a timely appeal from the judgment on May 11, 1990.

### ISSUES

I. Did Lucia have a good faith belief in the possibility that a jury might find the plaintiff's case meritorious at the time he filed the lawsuit?

II. Did Lucia act without a good faith belief in the merits of his case when: (a) on February 13, 1986 he sent a letter stating that it was his "best guess" that Smith was not liable and, (b) after sending the letter, Lucia continued with the lawsuit?

III. If Lucia had the requisite good faith belief in the merits of his case, was that belief objectively reasonable?

### DISCUSSION

There are five elements to a claim for malicious prosecution. A plaintiff must prove that a defendant "(1) instituted a civil action which was (2) motivated by malice, (3) begun without probable cause, (4) terminated in plaintiff's favor, and (5) damaged plaintiff." *Bradshaw v. State Farm Mut. Auto. Ins.*, 157 Ariz. 411, 417, 758 P.2d 1313, 1319 (1988) (citing *Carroll v. Kalar*, 112 Ariz. 595, 596, 545 P.2d 411, 412 (1976)). The fundamental question which arises is whether Smith established that Lucia filed the underlying action without probable cause. The plaintiff's "failure to establish a lack of probable cause is a complete defense to an action for malicious prosecution." *Carroll*, 112 Ariz. at 596, 545 P.2d at 412 (citations omitted). Because we dispose of the case on the question of probable cause, we do not consider the other elements of Smith's claim for malicious prosecution.

*I. Lucia's Belief in the Merits of the Case.*

Arizona recognizes the slight but crucial distinction between the probable cause standard applied to civil cases and that applied in criminal cases. In criminal cases, probable cause to initiate an action exists only if the prosecutor believes that an accused is guilty. *Bradshaw*, 157 Ariz. at 417, 758 P.2d at 1319. However, a person filing a civil suit has probable cause if that person *reasonably believes in the possibility* that the claim may be valid. *Bradshaw*, 157 Ariz. at 418, 758 P.2d at 1320 (emphasis added); Restatement § 675; 1 Harper *et. al, The Law of Torts*, § 4.2, p. 407 and cited cases. A certainty of success is not required. *Bradshaw*, 157 Ariz. at 418, 758 P.2d at 1320 (citing Restatement § 674 comments e and f, and 675 comment c). Rather, the civil initiator need only reasonably believe that there is a " 'good chance of establishing [the case] to the satisfaction of the court or jury.' " *Id.*, 157 Ariz. at 417, 758 P.2d at 1319; W. Prosser & R. Keeton, *The Law of Torts* § 120, at 893 (5th ed.1984).

■ *Bradshaw* holds that the probable cause analysis in civil proceedings incorporates both subjective and objective elements *Id.*, 157 Ariz. at 417, 758 P.2d at 1319. As authority for the adoption of the subjective-objective test, *Bradshaw* relied upon the case of *Williams v. Coombs*, 179 Cal.App.3d 626, 634, 224 Cal.Rptr. 865, 871 (1986). The California Supreme Court has since overruled *Coombs* in *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal.3d 863, 254 Cal.Rptr. 336, 765 P.2d 498 (1989). California now holds that the probable cause standard "does not include a determination whether the attorney subjectively believed that the prior claim was legally tenable." *Id.*, 47 Cal.3d at 881, 254 Cal.Rptr. at 347, 765 P.2d at 508 (citations omitted). We must, however, follow our supreme court's decision in *Bradshaw. See Bade v. Arizona Dep't. of Transp.*, 150 Ariz. 203, 205, 722 P.2d 371, 373 (1986). An attorney's subjective belief is still a part of the probable cause analysis in Arizona. Therefore, we must address Lucia's subjective belief.

■ The law in Arizona is "well developed and clear" that probable cause is always a question of law to be determined by the court. *Carroll*, 112 Ariz. at 598, 545

P.2d at 414;[6] *Bird v. Rothman*, 128 Ariz. 599, 602, 627 P.2d 1097, 1100 (App.), *cert. denied*, 454 U.S. 865, 102 S.Ct. 327, 70 L.Ed.2d 166 (1981). *Bradshaw* holds, "If the operative facts are undisputed, the existence of probable cause is a question of law to be determined *solely* by the court." *Id.*, 157 Ariz. at 419, 758 P.2d at 1321; *see also McClinton v. Rice*, 76 Ariz. 358, 367. 265 P.2d 425, 431 (1953).

■ Here, because the operative facts are not controverted, the question of Lucia's subjective belief in the claim is a matter of law to be determined by the court. We, therefore, review the issue of probable cause without any deference to the findings of the trial court. *Phillips v. Flowing Wells Unified School Dist.*, 137 Ariz. 192, 194, 669 P.2d 969, 971 (App.1983).

The state of Lucia's knowledge at the time he initiated the suit on behalf of his client is undisputed. Lucia's expert concluded the board was probably five to ten years old, which created the inference that someone had installed it during Smith's ownership of the property. Smith, himself, and two former owners stated that the defective board existed on the property when Smith owned it.

Although it was not "the world's best case," Lucia believed his client had a claim for relief against a former homeowner for known, concealed dangerous conditions existing on the premises at the time of sale. In addition, he thought there was a strong case against any former owner who negligently installed or modified the diving board. Lucia's associate lawyers' research confirmed his opinion. Their memoranda concluded that the Restatement and a number of cases from other jurisdictions supported his view.

We hold, as a matter of law, that when Lucia joined Smith as a party to the lawsuit, Lucia had the requisite subjective belief that there was a reasonable possibility that a jury might find the case against Smith meritorious. *See Bradshaw*, 157 Ariz. at 418, 758 P.2d at 1320; Restatement § 675 comments e and f.

## II. The "Best Guess" Letter and the Continuation of the Lawsuit.

Smith argues that Lucia did not have an "honest belief in the possible merits of the case" when he *continued* the lawsuit. We take this to be an argument that Lucia did not have the requisite subjective belief in the merits of the lawsuit when and after he sent Smith the "best guess" letter. Lucia's letter of February 13, 1985, stated that it was his best guess that Smith did not install or modify the board and offered to dismiss Smith. Although comment c to Restatement section 674 recognizes that an attorney who has properly commenced a civil action may be liable for continuing it without probable cause, that rule is not applicable here for the following reasons.

### A. Lucia's Attempt to End the Litigation

■ First, Smith's argument that one can infer Lucia's lack of belief in the merits from the "best guess" letter is beside the point. The "best guess" letter was an effort by Lucia to *end* the litigation against Smith approximately four months after it commenced. The case continued because Smith's lawyer refused to accept a dismissal unless Bush paid Smith's attorney's fees and costs. In fact, Smith's attorney opposed Lucia's November, 1986 motion to voluntarily dismiss Smith because it did not provide for the payment of attorney's fees and costs. Consequently, Lucia withdrew his motion.

---

6. There is dictum in the opinion which says "the honest or actual belief of [the attorneys] that [the Doctor] was guilty of malpractice ... has been held to ordinarily be a question for the jury." *Carroll*, 112 Ariz. at 599, 545 P.2d at 415 (citations omitted). However, when read in context, that statement supports the general rule announced by the court that the only role the jury plays in the determination of probable cause "is to determine what the actual facts are if the facts are conflicting." *Id.*, 112 Ariz. at 598, 545 P.2d at 414. The court goes on to state the general rule that if the plaintiff cannot point to any facts which demonstrate the attorneys did not have "an honest, actual belief in [the Doctor's] guilt," there is no disputed fact question to be resolved by the jury. *Id.*, 112 Ariz. at 599, 545 P.2d at 415.

Evidence in the record supports the inference that Smith's attorney was primarily concerned with preserving a claim against Lucia for malicious prosecution rather than resolving the lawsuit or being reimbursed for his attorney's fees. The trial transcript contains the following testimony from Smith's attorney, Thomas McLaughlin:

I said, Ron, there's nothing we can do about this now. I want to console you as much as I can, assure you that it looks just as bad to me as it does to you and I will [be] doing everything in my power to extract you from this predicament.

But any question of calling your accusers to task has to await the favorable termination of this lawsuit against you.

This was in 1984.

. . . .

That's why I didn't ask for any compensation in the underlying case because at that time [Lucia's motion to voluntarily dismiss] I knew that [Smith] had a cause of action against these people for far more than his attorney's fees.

(Emphasis added.)

Smith's argument is further weakened by his later conduct. Although Smith refused a dismissal which did not include his attorney's fees and costs, when the appropriate time came his attorney made no effort to recover costs and sought no relief under A.R.S. section 12–349 [7] for attorney's fees.

Second, Smith argues that Carl Meyer, President of Aqua Slide, conclusively testified as to the date of manufacture of the diving board. Smith's position seems to be that because Meyer testified that the board was manufactured *after* Smith owned the property, Smith could not possibly have been negligent. Therefore, Smith argues, we must infer that Lucia continued the underlying action without the necessary subjective belief in its merits. Smith contends that Lucia was required to either dismiss the lawsuit against Smith on Smith's terms, or be sued for continuing the action without probable cause.

We do not agree. Although Bush had agreed to dismiss Smith from the lawsuit, he had instructed Lucia not to agree to pay Smith's attorney's fees. Lucia was ethically required to follow Bush's instructions. Even if Lucia had been willing to pay Smith's attorney's fees out of his own pocket, he was ethically prohibited from doing so. Rules of Professional Conduct, ER 1.8(e), Ariz.R.Sup.Ct. 42, 17A, A.R.S. Smith rejected Lucia's proposed dismissal of the lawsuit on the only terms acceptable to Bush, that is, without payment of attorney's fees and costs. After Smith declined to accept the dismissal, Bush no longer sought affirmative relief. After this juncture, Smith's insistence upon the payment of his attorney's fees as a condition of dismissal was the impetus for the lawsuit. Lucia's subjective belief or non-belief in the merits of Bush's case no longer had any bearing on the continuation of the litigation.

Furthermore, Meyer's somewhat equivocal testimony about the date of installation of the diving board did not preclude Lucia's belief that Smith might still be liable. Meyer stated that the board was manufactured in "approximately" 1975 or 1976. Smith, himself, testified to the contrary when he said that the board was in existence when he owned the property. Additionally, Lucia's expert said the board was five to ten years old, placing its manufacture during the period of Smith's ownership. Lucia had the right to continue with discovery after Meyer's deposition. *See Roberts v. Kino Community Hosp.*, 159 Ariz. 333, 335, 767 P.2d 56, 58 (1988).

7. A.R.S. § 12–349 provides:
   A. Except as otherwise provided by and not inconsistent with another statute, in any civil action commenced or appealed in a court of record in this state, the court shall assess reasonable attorney fees, expenses and, at the court's discretion, double damages of not to exceed five thousand dollars against an attorney or party, including this state and political subdivisions of this state, if the attorney or party does any of the following:
   1. Brings or defends a claim without substantial justification.
   . . . .
   F. In this section, "without substantial justification" means that the claim or defense constitutes harassment, is groundless and is not made in good faith.

**B. Malice Does Not Give Rise to an Inference of Lack of Probable Cause**

■ Smith also argues that there was evidence of malice in Lucia's continuation of the suit. Smith contends that this gives rise to an inference of a lack of probable cause. However, probable cause and malice are two separate elements of the tort. Even if malice existed in this case, one cannot infer a lack of probable cause from the existence of malice. *McClinton*, 76 Ariz. at 366, 265 P.2d at 431. Lack of probable cause may give rise to an inference of malice, but the opposite is not true. *Id.* Thus, Smith's argument is without merit.

*III. Was Lucia's Belief Objectively Reasonable?*

We now address the reasonableness of Lucia's belief in the possibility of succeeding in Bush's suit. Arizona incorporates an objective test: "[U]pon the appearances presented ... would a reasonably prudent [lawyer] have instituted or continued the proceeding?" *Carroll*, 112 Ariz. at 596, 545 P.2d at 412 (quoting *McClinton*, 76 Ariz. at 367, 265 P.2d at 431); *Bird*, 128 Ariz. at 602, 627 P.2d at 1100. Unfortunately, however, our case law does not tell us how to measure this standard.

**A. The Objective Standard**

■ Cases decided under Rule 11, Federal Rules of Civil Procedure, which is identical to Rule 11, Arizona Rules of Civil Procedure,[8] are helpful in determining the standard by which we may measure the reasonableness of an attorney's conduct. Under Rule 11, an attorney violates the objective standard when: (1) there was no reasonable inquiry into the basis for a pleading or motion; (2) there was no chance of success under existing precedent; and (3) there was no reasonable argument to extend, modify, or reverse the controlling law. *International Shipping Co. v. Hydra Offshore, Inc.*, 875 F.2d 388 (2d Cir.1989), *cert. denied*, 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989); *accord Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531 (9th Cir.1986). *See also* Ariz.R.Sup.Ct. 42, ER 3.1, 17A, A.R.S. We conclude that the Rule 11 objective standard should apply here.

The Rule 11 objective standard is consistent with *Bradshaw* in that, even if the existence of the alleged facts is not certain, it is enough if the attorney reasonably believes he can establish their existence to "the satisfaction of the jury." *Bradshaw*, 157 Ariz. at 417, 758 P.2d at 1319. Also, comments to the Arizona Rules of Professional Responsibility provide that when an attorney takes an action on a client's behalf, it "is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery." Ariz. R.Sup.Ct. 42, ER 3.1, 17A, A.R.S.

**B. Reasonable Inquiry Into the Facts**

■ The evidence indicates that Lucia made a reasonable inquiry into the facts and the law concerning Smith's liability. Lucia assigned his paralegal to investigate the facts relating to the pool and diving board's installation. The investigation lasted several months. During the course of investigating building permit records, the paralegal discovered that Paddock had installed the pool in 1968 or 1969. Being familiar with Paddock and their installation standards, Lucia believed that one of the homeowners probably had altered the board.

The paralegal could not verify when the diving board was installed because it did not require a permit. From the county records she determined who owned the premises from 1968 to the time of the injury. She contacted and interviewed all of the owners with the exception of one, Mr. Dorsa Day, who sold the home to

8. Ariz.R.Civ.P. 11(a):
    The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation....

Smith. Lucia and his firm spent twenty-five to thirty hours and, in addition, paid a private investigator more than $1,000.00 in an effort to locate Mr. Day.

Lucia also retained an expert to examine the pool and diving board. Lucia's expert placed the age of the board to be five to ten years—three to eight years after Mr. Day sold the house to Smith. County records indicated that Smith owned the house within that time frame.

Lucia's paralegal interviewed Smith over the phone and in person. Smith gave conflicting information regarding whether the board had been altered when he moved in. Initially, he stated that the board and the unused holes were present while he lived there; later, he claimed that he did not remember the "two bigger holes toward the rear of the board." Smith also gave the paralegal incorrect information about when he owned the house. The paralegal told Lucia she was skeptical of Smith's candor.

Although the facts had not been fully substantiated when the action was filed, the record establishes that Lucia made a reasonable pre-filing inquiry. An attorney is entitled to fully develop the facts through discovery. Lucia did not act improperly.

### C. Reasonable Inquiry Into Legal Theories of Recovery

■ Applying the objective standard, was it reasonable for Lucia to conclude that there was a "possibility" he might recover against Smith? Lucia argues that four legal theories support the possibility of holding Smith liable: (1) negligence; (2) vendor liability; (3) res ipsa loquitur; and (4) products liability. We need not decide whether Smith actually could have been held liable under the facts; our inquiry is limited to whether a reasonable attorney might have brought such a suit and continued it in these circumstances.

Smith called two attorney witnesses who testified, without objection, that there was no probable cause for the lawsuit against Smith. One of them, Smith's attorney in the underlying action, testified that "from the start it seemed like a totally groundless lawsuit." The other expert witness testified that there was no reasonable legal or factual basis to support the lawsuit.

In Arizona, testimony of attorney experts will not support a finding of lack of probable cause. *Carroll*, 112 Ariz. at 599, 545 P.2d at 415. Probable cause is a matter of law. Because "it is the responsibility of the trial judge to say whether the facts give rise to probable cause, the expressions of opinions by others are not relevant and are wholly immaterial to the decision in the case." *Id.* The trial court should not have considered these opinions and we will not consider them.

Lucia argues that it was reasonable to name Smith as a defendant. He claims that Smith's liability flows from the theory that Smith had either installed or altered the diving board, thereby creating the dangerous condition which led to Bush's injuries. Smith counters that once he sold the property, he became insulated from any liability for personal injuries occurring on the property. Smith bases his argument on section 352 of the Restatement of Torts:

> Except as stated in § 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession.

Smith contends that section 352 absolutely barred his liability at the inception of Bush's lawsuit. However, section 352 was not, as Smith contends, automatically the law in Arizona when this action was filed. The courts of this state look to the Restatement for guidance, not as a law to be followed blindly. *Reed v. Real Detective Publishing Co.*, 63 Ariz. 294, 302-03, 162 P.2d 133, 137-38 (1945); *see Dorman v. Swift & Co.*, 162 Ariz. 228, 231, 782 P.2d 704, 707 (1989).

Moreover, we must read section 352 together with section 353, which carves out an exception to the general rule of vendors' nonliability. There is liability under section 353 when the vendor conceals or fails to disclose dangerous conditions known to constitute an unreasonable risk of harm to

persons on the land. Lucia based his so called latent-defect claim on this theory. We, therefore, do not agree with Smith's argument that section 352 created an absolute immunity from liability for Smith at the time Lucia filed suit. Sections 352 and 353 would not preclude Bush's claim that Smith knew and failed to disclose that the use of the board involved an unreasonable risk.

This court has only recently adopted section 352 as the general rule in this state. *Andrews ex rel. Kime v. Casagrande,* 167 Ariz. 71, 75, 804 P.2d 800, 804 (App.1990). However, this does not dispose of the issue. The question is not whether the underlying suit would have been successful, but whether Lucia had a reasonable chance at success on the merits. *Bradshaw,* 157 Ariz. at 417–18, 758 P.2d at 1319–20; Restatement § 675 comments e and f. At the time Lucia filed suit, this question had not been answered in Arizona.

Our supreme court recently held that the negligent manufacturer of a product could not take advantage of section 352 to insulate itself from liability for its negligence merely because it sold the defective product along with the real estate. *Dorman,* 162 Ariz. at 232, 782 P.2d at 708. The holding in *Dorman* affords support to Lucia's argument that section 352 would not apply to preclude Smith's liability as a former owner for negligently installing a defective diving board.

Furthermore, at the time of Bush's suit, other courts had concluded that section 352 did not preclude liability of a former owner who actually creates the unreasonably dangerous condition on the premises. *E.g., Preston v. Goldman,* 164 Cal.App.3d 1135, 210 Cal.Rptr. 913 (1985), *rev'd,* 42 Cal.3d 108, 227 Cal.Rptr. 817, 720 P.2d 476 (1986); *Cogliati v. Ecco High Frequency Corp.,* 181 N.J.Super. 579, 439 A.2d 91 (1981), *aff'd,* 92 N.J. 402, 456 A.2d 524 (1983). *See* Emile F. Short, Annotation, *Liability of Vendor or Grantor of Real Estate for Personal Injury to Purchaser or Third Person Due to Defective Condition of Premises,* 48 A.L.R.3d 1027, § 4(b) (1973). To adopt Smith's reasoning that Lucia acted without probable cause would require us to hold that, in absence of controlling precedent in Arizona, an attorney acts unreasonably if he or she follows the minority view in the United States. We refuse to do this.

## D. Minute Entry Granting Smith Summary Judgment

■ Smith also argues that the minute entry entered by Judge Hilliard in the underlying action conclusively demonstrates Lucia's absence of probable cause. The minute entry states that:

Plaintiffs have agreed that a claim is not presented against Defendant Smith under Sections 352 and 353 of the Second Restatement of Torts on the basis of Smith's ownership of the property.

Smith's argument is without merit. First, even if Lucia "agreed" in the argument on the motion for summary judgment that sections 352 and 353 insulated Smith from a claim "on the basis of Smith's ownership," those sections do not apply to former owners' liability for unreasonably *creating* a dangerous condition on the premises. A claim against Smith for negligently altering the diving board is not the same as a latent-defect claim and therefore is not precluded by the minute entry. Second, the summary judgment based on the lack of substantial evidence that Smith altered the board fails to establish lack of probable cause. *See* Restatement § 675 comment f.

Whether Restatement section 352 applies here to insulate prior owners from a latent-defect claim is not the point. The point is that an attorney in the same circumstances as Lucia had the right to test the bounds of the law. Restatement § 675 comment f. Even if section 352 had been adopted in Arizona when the action was filed, Lucia was entitled to argue for a good faith modification, or reversal of the law as it existed, without liability in a subsequent malicious prosecution claim. Because the theory of negligent installation or alteration of the diving board reasonably supported the action against Smith, we need not consider the other theories raised by Lucia.

Applying the appropriate probable cause standard to the facts of this case, we find Lucia's belief to have been reasonable. The evidence in the record satisfies both

requirements of probable cause. We find that, as a matter of law, Lucia possessed the requisite probable cause in initiating the suit against Smith. Lucia's probable cause is a complete defense to Smith's action for wrongfully initiated civil proceedings. *Carroll*, 112 Ariz. at 596, 545 P.2d at 412.

### IV. CONCLUSION

We conclude that, based on the undisputed facts which formed the basis for Lucia's knowledge, he had a good faith belief that a trier of fact might find the claim against Smith meritorious. We also find that this belief was objectively reasonable. Thus, we hold that Lucia had probable cause to file the suit and continue litigation against Smith. The trial court, therefore, erred in finding that probable cause did not exist as a matter of law. We reverse and vacate the judgment of the trial court.

HAIRE (Retired) and GALATI, JJ.,** concur.