NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

RHYTHM MOTOR SPORTS, L.L.C., an Arizona limited liability
company, *Plaintiff/Appellant*,

*v.*

KEVIN L. BECKWITH and KEVIN L. BECKWITH P.C., an Arizona
professional corporation, *Defendants/Appellees*.

No. 1 CA-CV 14-0010
FILED 7-16-2015

Appeal from the Superior Court in Maricopa County
No.  CV2012-013940
The Honorable Michael J. Herrod, Judge

**AFFIRMED IN PART; VACATED IN PART; REMANDED**

COUNSEL

The Calhoun Law Firm, PLC, Tempe
By S. Jay Calhoun
*Counsel for Plaintiff/Appellant*

Broening Oberg Woods & Wilson, P.C., Phoenix
By Donald Wilson, Jr., Brian W. Purcell
*Counsel for Defendants/Appellees*

## AMENDED MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Peter B. Swann joined.

**W I N T H R O P**, Judge:

**¶1**          Rhythm Motor Sports, L.L.C. ("RMS") appeals from the superior court's entry of summary judgment in favor of Kevin L. Beckwith ("Beckwith") and his law firm, Kevin L. Beckwith, P.C. ("Firm"), on claims of wrongful institution of civil proceedings ("WICP") and abuse of process. For the following reasons, we affirm in part and vacate in part the entry of summary judgment on the WICP claim and affirm in part and vacate in part the entry of summary judgment on the abuse of process claim.

### FACTS AND PROCEDURAL HISTORY[1]

### I.     The Underlying Litigation

**¶2**          RMS is an Arizona limited liability company that sells "after market" – or post-manufacture - parts for autos.  George Sayegh, G & S Auto Sales and Leasing, Inc.'s ("G & S") sole shareholder, bought a turbocharger tool kit from RMS in 2008.  Sayegh paid cash to Nick Cornelius, an employee of RMS, to begin work on installing the turbo kit in a G & S Honda Civic.  Cornelius installed the turbo kit in November 2008. Dissatisfied with the installation, Sayegh had the Honda towed to Import Power House ("Import") for additional work and retained Beckwith and Firm to recover damages.  Invoices showed that Sayegh had the vehicle towed three times between G & S Auto Sale and Import and two times between G & S Auto Sale and G & S Auto Repair Shop.

**¶3**          Through Beckwith, G & S claimed that RMS's improper work had "completely ruined the motor on the Honda."  In addition, G & S demanded "all of RMS' repair receipts on this vehicle," a refund for $2,818.91 in installation charges and repairs Import made to the Honda, and unspecified expenses to repair the motor.  RMS refused to pay, arguing that

---

[1]      We view the evidence and the inferences drawn from it in the light most favorable to RMS. *Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 291, 293, ¶¶ 13, 21, 229 P.3d 1031, 1033, 1035 (App. 2010).

it had no installation contract with G & S and had not installed the turbo kit. G & S accordingly filed suit against RMS in 2010 for breach of contract and negligence and claimed $5,773.91 in damages (Maricopa County Superior Ct. No. CV2010-022443). The superior court referred the case to arbitration.

¶4        RMS moved for summary judgment based upon the lack of a written contract between RMS and G & S. In declining to grant the motion, the superior court noted that the record was a "mess" and ordered Beckwith to amend G & S's complaint and its disclosure statement to specify the alleged contract's terms and to clarify G & S's damages. Firm and Beckwith accordingly amended the complaint to include a $10,464.73 damages claim for installation, repairs, a new motor, and towing charges. RMS responded with a motion to dismiss, and the superior court subsequently denied the motion.

¶5        In deposition testimony, Sayegh explained that he had visited RMS to order high performance auto parts. While at RMS, Sayegh asked an employee of RMS, Nick Cornelius, if Cornelius was aware of anyone who could install the turbo kit. Cornelius told Sayegh he would install the turbo kit. In deposition testimony, both Sayegh and Cornelius denied that the installation work was done at RMS.

¶6        According to Sayegh's testimony, Import mechanic Ramsey Leong had told him that "the vehicle is not running right, the turbo is not installed right." In a disclosure statement filed on November 12, 2010, Beckwith similarly asserted that Leong would testify that RMS improperly installed the turbo kit, causing the Honda to lose its engine and G & S to sustain damages. But Leong later signed an affidavit stating that the turbo kit was properly installed and he made no repairs to it when Sayegh first brought it in. When Sayegh brought the Honda back to Import four months later seeking repairs to the turbo kit, Leong stated that he still found no issue with the turbo kit or its installation, and made unrelated repairs. Thereafter the car "operated great" and future visits turned up no problems with the turbo kit or its installation. Import eventually replaced the Honda's engine at Sayegh's request, after noting that it "had high mileage . . . and/or . . . the engine was pushed passed [sic] its limits." Contrary to representations in the disclosure statement, Leong testified at a March 26, 2012 evidentiary hearing that he had never told Beckwith that he would be an expert witness, and Leong stated it was "not [his] opinion" that the turbo kit was improperly installed.

**¶7**        Ultimately, the arbitrator found that the RMS invoices "in no way demonstrate that Defendant contracted to install the turbo kit in question." The arbitrator granted RMS its costs expended in proving that there was no written installation contract and the final arbitration award included a finding that the G & S witnesses' testimony was "contradictory and, as a result, was not credible." The superior court had previously concluded in a discovery hearing that Leong never held the opinions attributed to him in G & S's Rule 26.1 Disclosure Statement. The court incorporated the arbitrator's award in a judgment, which G & S did not appeal.

## II.        This Litigation

**¶8**        RMS then sued G & S, Beckwith, and Firm for WICP and abuse of process. All defendants moved for summary judgment on liability and damages**.** In support of these motions, Beckwith submitted an affidavit stating that he had brought suit based upon the RMS invoices and information received from Sayegh. The superior court granted summary judgment in favor of Firm and Beckwith, holding that RMS failed to establish that Beckwith and Firm had reason to know that the complaint was "objectively baseless." The superior court, however, denied summary judgment as to the claims against G & S.

**¶9**        The superior court incorporated the summary judgment rulings concerning Beckwith and Firm in a Rule 54(b) judgment. This appeal followed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).[2]

## ANALYSIS

## I.        Wrongful Institution of Civil Proceedings

**¶10**        Summary judgment is not warranted if there are material factual disputes or if the court must choose among competing inferences, determine witness credibility, or weigh the quality of evidence. *Taser Int'l, Inc. v. Ward*, 224 Ariz. 389, 393, ¶ 12, 231 P.3d 921, 925 (App. 2010). We review the grant of summary judgment *de novo*. *Great Am. Mortg., Inc. v. Standard Ins. Co.*, 189 Ariz. 123, 125, 938 P.2d 1124, 1126 (App. 1997). This court may affirm the summary judgment if the superior court "reached the right result for the wrong reason." *Aida Renta Trust v. Maricopa Cnty.*, 221

---

[2]        We cite the current version of the statutes if no revisions material to our decision have occurred since the relevant dates.

Ariz. 603, 608, ¶ 5, 212 P.3d 941, 946 (App. 2009) (citation and internal quotation marks omitted).

¶11        A WICP claim requires proof that the defendant "(1) instituted a civil action which was (2) motivated by malice, (3) begun [or maintained] without probable cause, (4) terminated in plaintiff's favor and (5) damaged plaintiff." *Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 411, 416-17, 758 P.2d 1313, 1318-19 (1988).  In this case, the pivotal issue is whether Beckwith and Firm had probable cause to begin or maintain the action.  The plaintiff's "failure to establish a lack of probable cause is a complete defense to an action for [wrongful use of civil proceedings]." *Carroll v. Kalar*, 112 Ariz. 595, 596, 545 P.2d 411, 412 (1976).  Whether a particular set of facts establishes probable cause is a question for the court only if the operative facts are undisputed.  *Smith v. Lucia*, 173 Ariz. 290, 295, 842 P.2d 1303, 1308 (App. 1992); *see generally Bird v. Rothman*, 128 Ariz. 599, 603, 627 P.2d 1097, 1101 (App. 1981) (describing the jury's function as "determin[ing] the actual facts of what the prosecuting party or attorneys performed in the way of investigation and research").

## A.    The Probable Cause Standard

¶12        In support of the summary judgment motion on WICP, Beckwith filed an affidavit and a statement of facts relating that G & S's complaint was based on information received from Sayegh, along with invoices and billing statements.  Beckwith's affidavit further provides that he honestly and in good faith believed that he had a good chance of establishing to a fact finder that G & S hired RMS to install the turbo kit and that RMS negligently installed it.  To meet the probable cause standard, this affidavit and other evidence must satisfy both objective and subjective components.  *See Chalpin v. Snyder*, 220 Ariz. 413, 419, ¶ 21, 207 P.3d 666, 672 (App. 2008).  In assessing the objective element, the initiator must "reasonably believe[] that he has a good chance of establishing [his case] to the satisfaction of the court or the jury." *Bradshaw*, 157 Ariz. at 417, 758 P.2d at 1319 (quoting PROSSER & KEETON ON THE LAW OF TORTS ("PROSSER & KEETON") § 120, at 893 (5th ed. 1984)).

¶13        In support of its ruling granting summary judgment on the WICP claim, the superior court relied in part on the underlying case judge's decision to deny RMS's summary judgment and Rule 12(b)(6) motions.  Contrary to Beckwith and Firm's argument, these rulings are not a critical factor in the probable cause analysis.  "The law has never recognized [surviving a summary judgment motion] as the test for malicious prosecution." *Bradshaw,* 157 Ariz. at 417, 758 P.2d at 1319; *Chalpin*, 220 Ariz.

at 422-23, ¶ 38, 207 P.3d at 675-76 ("The test for objective probable cause is not whether a person can force an issue to trial."). In this case, RMS's two dispositive motions quickly followed the filing of the complaint and the amended complaint, and the superior court had directed G & S to further delineate its contract theory. The superior court's rulings consequently were not indicative of the ultimate merits of G & S's claims.

## B. Filing the Amended Complaint

¶14 RMS argues that, in addition to applying the wrong legal standard, the superior court overlooked material issues of fact preventing resolution of the WICP claim as a matter of law. Although the evidence ultimately failed to support Sayegh's version of events, there is no genuine dispute as to what facts Beckwith had at the time he filed the amended complaint. Applying the *Bradshaw* standard to these facts, we affirm the summary judgment on the WICP claim only with respect to Beckwith's filing of the amended complaint.

¶15 The arbitrator ultimately rejected Sayegh's version of events. There is no genuine dispute, however, concerning what Sayegh told Beckwith about the case before the latter filed the amended complaint. Sayegh told Beckwith that Cornelius, an employee of RMS, performed the installation upon payment of $1,500, and Sayegh had subsequently taken the vehicle to Import for repairs. He provided Beckwith with invoices for repair work and towing expenses, as well as his American Express bill reflecting charges at RMS for unspecified items. RMS disputed Sayegh's version of events and denied performing the work. Beckwith did not have to believe RMS's assertions; under *Bradshaw*, Beckwith also "did not have to be certain [G & S] would prevail; rather, [he] only had to reasonably believe in the possibility that the court would find [G & S's] claim valid." *Bradshaw*, 157 Ariz. at 418, 758 P.2d at 1320. Based upon the documents, Cornelius's status as RMS's employee, and Sayegh's representations about Leong's testimony, Beckwith could reasonably have believed at the inception of the litigation that he had a good chance under *Bradshaw* of establishing the existence of a contract and negligent installation. *See Bird*, 128 Ariz. at 603-04, 627 P.2d at 1101-02 (granting summary judgment because the parties did not dispute the facts surrounding the plaintiff's pre-filing investigation and research). Regardless of the relative strength of the case, the record established probable cause to file the amended complaint. *See id.*

### C.       Maintaining and Continuing the Proceedings

**¶16**        The superior court based its summary judgment on RMS's failure to establish that Beckwith and Firm had reason to know that G & S's complaint was objectively baseless at the time of filing.  RMS contends that the superior court erroneously failed to consider whether Beckwith also had probable cause to *continue the prosecution* of the action.  We agree.

**¶17**        A WICP claim arises not only when a party brings suit, but also when it continues or maintains the litigation.  *See McClinton v. Rice*, 76 Ariz. 358, 367, 265 P.2d 425, 431 (1953) (explaining that the test is: "would a reasonably prudent man have instituted or continued the proceeding?"); *see generally* Restatement (Second) of Torts § 674 (1977) (a party may bring a WICP claim against one who "takes an active part in the initiation, continuation or procurement of civil proceedings against another"); *id*. cmt. c (explaining that a WICP claim may be asserted against one who "takes an active part in [a civil proceeding's] continuation for an improper purpose after he has learned that there is no probable cause for the proceeding . . . .").

**¶18**        The complaint's WICP allegations are not limited to probable cause at the time of filing, and also extend to the post-filing activity of exchanging Rule 26.1 disclosure statements misrepresenting Leong's opinion.  Further, the claim incorporates the allegation that Beckwith and Firm made "false material statements" during the litigation and "they failed to correct those statements."  Beckwith's affidavit did not allege, and the superior court did not consider, whether Beckwith and Firm had probable cause to maintain and continue to prosecute the action after filing the amended complaint.

**¶19**        The record contains material evidence of Beckwith's lack of diligent investigation after filing the amended complaint.  Beckwith did not depose Cornelius during the pendency of the underlying lawsuit, and he failed to contact Leong, G & S's designated expert and the mechanic performing the repairs, to verify Leong's purported opinions.  Consequently, G & S's disclosure statements represented for months that Leong would testify that RMS negligently installed the turbo kit.  During the evidentiary hearing, however, Leong denied that the turbo kit was negligently installed.  Beckwith later admitted that Leong's testimony was fatal to G & S's claim for damages to the Honda's motor, yet he failed to dismiss that claim prior to the arbitration hearing.  Although probable cause existed at the time of filing, the record fails to support summary judgment on probable cause to continue and maintain the claim thereafter.

*See Carroll*, 112 Ariz. at 598-99, 545 P.2d at 414-15 ("If from one set of facts the conclusion can be inferred that probable cause exists, and from another that it does not, it is for the jury to determine the true state of facts."). We therefore vacate the entry of summary judgment as it relates to the WICP claim concerning maintaining the underlying action after the filing of the amended complaint.

## II. Abuse of Process

¶20 RMS also argues that Beckwith and Firm were not entitled to summary judgment on the abuse of process claim. This tort requires proof that a defendant committed a willful act in using judicial process for an ulterior purpose not proper in the regular conduct of the proceeding. *Nienstedt v. Wetzel*, 133 Ariz. 348, 353, 651 P.2d 876, 881 (App. 1982). "Abuse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish." PROSSER & KEETON § 121, at 897.

¶21 The abuse of process tort extends to the "entire range of procedures incident to the litigation process" and includes noticing a deposition and general motion practice. *Nienstedt*, 133 Ariz. at 352, 651 P.2d at 880. On appeal, RMS narrows its abuse of process allegations to misuse of the subpoena, discovery, and the hearing processes. Specifically, RMS's Opening Brief alleges that Beckwith and Firm (1) made false statements in an effort to disqualify RMS's counsel, (2) issued two subpoenas to Leong, and (3) added new damages to the original complaint and filed it as an amended complaint. Because RMS has developed legal and factual authority only with respect to G & S's motion to disqualify RMS's counsel, we limit our abuse of process review to that issue. *See Polanco v. Indus. Comm'n*, 214 Ariz. 489, 491 n.2, ¶ 6, 154 P.3d 391, 393 n.2 (App. 2007); *see generally* Ariz. R. Civ. App. P. 13(a)(6).

¶22 Liability for abuse of process results "only when the sense of awareness progresses to a sense of purpose, and, in addition the utilization of the procedure for the purposes for which it was designed becomes so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure." *Nienstedt,* 133 Ariz. at 354, 651 P.2d at 882. Beckwith based the disqualification motion on alleged improper contacts between RMS's counsel and Leong, G & S's designated expert. After a hearing, the superior court found that RMS's counsel had obtained an affidavit from Leong. Nevertheless, the court denied G & S's

disqualification motion in view of the lack of prejudice, explaining that Leong was never going to support G & S's negligence theory.

¶23        Although Leong was disclosed by Beckwith as having expert opinions, Leong was not a retained or specially employed expert; instead he was, first and foremost, a fact witness. As such, counsel for RMS was entitled to contact Leong to determine his knowledge of the underlying events and the work performed on the Honda. In that regard, counsel for RMS exercised appropriate diligence. In contrast, Beckwith was not diligent relative to interviewing Leong. At a minimum, there is a question of fact as to Beckwith's motivation for filing the motion to disqualify. Accordingly, we vacate the entry of summary judgment on this aspect of the abuse of process claim.

### III.    Remaining Issues

¶24        In its Opening Brief, RMS complains that the superior court (1) expanded the comparative fault statute by allowing Beckwith and Firm to identify RMS's counsel as a non-party at fault; (2) erred by altering another superior court's judgment; and (3) erroneously ignored collateral estoppel principles in ordering that Cornelius be deposed. Beckwith and Firm's answering brief does not address RMS's arguments as to these remaining issues. In addition, Beckwith and Firm concede that the superior court applied an illegal rate of interest.

¶25        Although the superior court initially denied RMS counsel's Motion to Strike Beckwith and Firm's "Notice of Non-Party at Fault," the superior court ultimately granted RMS counsel's Motion to Strike an identical notice filed by co-defendant G & S. The court appropriately concluded that the comparative fault statute did not apply or provide a defense to the intentional torts alleged, and that reasoning applies equally to the notice of non-party at fault filed by Beckwith and Firm. Accordingly, we hold that, on remand, any "fault" on the part of RMS's counsel is not relevant to those portions of the WICP and abuse of process claims that remain to be litigated.

¶26        In granting summary judgment, the trial court awarded taxable costs to Beckwith and Firm. In light of our decision on appeal, we vacate that award in its entirety, without prejudice to the trial court's resolution of costs upon conclusion of the case on remand. Because we vacate the cost award, the issue as to the interest rate applied by the trial court to such award is moot.

¶27  RMS urges that we order any discovery concerning Cornelius' status and scope of work as an employee of RMS precluded on res judicata grounds, even though RMS did not raise this issue in summary judgment briefing prior to this appeal. We decline to address it. *See Lansford v. Harris*, 174 Ariz. 413, 419, 850 P.2d 126, 132 (App. 1992) (holding that on appeal from a grant of summary judgment an appellant may not advance new theories or raise new issues). Likewise, we will not assess whether litigation of this issue constitutes a horizontal appeal.

## CONCLUSION

¶28  Based on the foregoing analysis, we vacate the grant of summary judgment on RMS's WICP claim with respect to Beckwith and Firm's continuation of the proceedings after filing the amended complaint, and the abuse of process claim relating to the filing of the motion to disqualify counsel, but otherwise affirm summary judgment on the WICP and abuse of process claims. We remand those portions of the WICP claim and the abuse of process claim for resolution consistent with this decision, and vacate the total award of costs, without prejudice to reconsideration by the trial court upon conclusion of the case. In the exercise of our discretion, we decline to award either party attorneys' fees on appeal pursuant to A.R.S. § 12-341.01(A), Arizona Rule of Civil Procedure 11, A.R.S. § 12-349, and Arizona Rule of Civil Appellate Procedure 21(c). Subject to compliance with Rule 21, RMS is awarded its costs on appeal.



Ruth A. Willingham · Clerk of the Court
FILED: ama