560 P.2d 818

STATE of Arizona, Appellee,

v.

Curtis BURNLEY, Appellant.

No. 1 CA-CR 2027.

Court of Appeals of Arizona, Division 1, Department C.

Feb. 10, 1977.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., and Lynn Hamilton, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Rudy J. Gerber, Deputy Public Defender, Phoenix, for appellant.

## OPINION

HAIRE, Judge.

Defendant was charged in the Maricopa County Superior Court with the crime of armed robbery. He filed a motion to suppress certain physical and eyewitness identification evidence, contending that he was initially illegally detained, and that the indicated physical and eyewitness identification evidence was the result of that illegal detention and therefore inadmissible. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

In ruling on defendant's motion to suppress, the trial judge apparently agreed that the initial detention of defendant was illegal, since he granted the motion to suppress the physical evidence, a gun and money taken in the robbery. However the trial judge was of the opinion that even though the initial detention of the defendant was illegal, the exclusionary rule did not require the suppression of the subsequently obtained eyewitness identification, and he therefore denied the motion to suppress this identification evidence.

After the trial judge ruled on the motion to suppress, the matter was submitted to him for a determination of defendant's guilt or innocence based upon the motion to suppress record and police reports. Defendant was found guilty and sentenced to a term in the Arizona State Prison.

On this appeal, the sole contention of error is the trial court's refusal to suppress the eyewitness identification testimony.[1]

An examination of the transcript of the motion to suppress hearing reveals that at 4:20 a. m. on the morning in question, two City of Phoenix patrolmen received a call concerning an armed robbery which had just occurred approximately four blocks away, at 28th Street and East Van Buren. They immediately responded, and during the 45 seconds or so that it took to arrive at the scene they received a radio broadcast describing the robbery suspect as being a white male, approximately 20 years old, and six feet tall. Immediately upon arriving at the scene of the robbery, they were informed by another officer that the suspect was afoot when last seen, and was heading south on 28th Street. The two patrolmen then proceeded in the same direction. When they had gone two blocks, one of the officers observed a slowly moving vehicle about two blocks away on the cross street to his right. This vehicle was the only traffic on the road. The officers turned in that direction, and approached with red lights flashing. However, the vehicle did not stop, but continued at a speed of about 10 to 15 miles per hour for approximately two blocks, with the officers following with flashing red lights. At that point another police vehicle, also responding to the robbery broadcast, approached from the opposite direction, turned on his red lights, and in order to avoid a head-on collision, the suspect vehicle was forced to the side of the road and stopped. Prior to the time the vehicle was brought to a stop, the police officers' view had been obstructed by a rear window screen reflector and therefore they

---

1. No "Dessureault" attack is made on the reliability of the eyewitness identification. *See State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969), reh. den., 104 Ariz. 439, 454 P.2d 981, cert. den., 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257.

could not determine the number of occupants or whether the driver of the car was white or black. After the car was finally stopped, the officers approached with guns drawn, and ordered the driver to get out of the car. He did not respond until this order had been repeated three times.

When he did get out, the officers observed that the driver (defendant) was a black male, approximately six feet tall, in his early twenties, and had on a pair of red and white checked trousers that were unbuttoned, unzipped, and were partially pulled down. The officers stated that there appeared to be a light-colored pair of pants underneath.

The defendant was directed to put his hands on top of the vehicle and he was patted down for weapons. While this was occurring, a revised description was received on the police radio, stating that the robbery suspect was black rather than white, with an ensuing description of the suspect's clothing which exactly matched that of the driver of the stopped vehicle. The driver was then handcuffed and placed under arrest. Next in time sequence, the police officer who had arrived in the other patrol car looked inside the suspect's vehicle through the open door and observed a gun lying on the front seat and some money stuffed around the edge of the seat. These items were impounded and the defendant was then taken back to the scene of the robbery where he was positively identified as the robbery suspect.

The initial sighting of defendant's vehicle occurred between three and four blocks from the scene of the robbery, and the total elapsed time from the initial police broadcast until the police officers placed the suspect in their car to return to the scene of the robbery was between four and five minutes.

The record does not clearly reveal the reasoning underlying the trial judge's ruling which suppressed the gun and money, but allowed the introduction into evidence of the subsequent eyewitness identification.

The state contended in the trial court that in view of the facts involved, the initial stopping of defendant's vehicle was a valid investigative stop, which did not violate defendant's fourth amendment rights, and that therefore both the physical evidence and the eyewitness identification evidence were admissible. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). By granting the motion to suppress the physical evidence, it appears that the trial judge must have rejected the investigative stop rationale, but felt that, under some attenuation or intervening independent act theory, the subsequent eyewitness identification was not so connected with the initial stop as to render it inadmissible as "tainted fruit" within the *Wong Sun* exploitation doctrine.

■■ We need not consider whether the eyewitness identification evidence would have been admissible under this latter reasoning, since it is our opinion that the initial stop was not illegal, and that therefore there is no basis upon which the eyewitness identification evidence could have been suppressed. On appeal the ruling of the trial court will be affirmed on any grounds which were within the issues, where the correct legal result was reached even though based on the wrong reason. *State v. Sardo,* 112 Ariz. 509, 543 P.2d 1138 (1975); *State v. Dugan,* 113 Ariz. 354, 555 P.2d 108 (1976). We hold that, as a matter of law, the uncontroverted facts presented at the motion to suppress hearing furnished ample support for an investigative stop of defendant's vehicle, and that therefore the trial judge correctly denied the motion to suppress the identification testimony. *State v. Ruiz,* 19 Ariz.App. 84, 504 P.2d 1307 (1973).[2]

We think it important to consider, bearing upon the reasonableness of the investigative stop, the proximity in time and distance between the scene of the robbery and the objected-to police conduct. At 4:20 a. m. the police were leaving the scene where an armed robbery had just occurred and they had been told that the suspect was last

---

**2.** We note that the state has not cross-appealed. Therefore our holding does not affect the

trial court's ruling suppressing the physical evidence.

seen heading south, on foot. As they proceeded in that direction, they saw defendant's vehicle, moving very slowly down a side road which was the next major right turn, and, in the words of the police officer witness, the vehicle "was the only traffic on the road". (The radio broadcast describing the fleeing suspect as white was irrelevant since, as the police testified, because of a reflector screen they could not view the interior of the vehicle so as to ascertain the driver's color). At this point, under *Terry v. Ohio, supra,* it is our opinion that the police had enough "specific and articulable facts" to warrant their stopping the car briefly to question the driver. The reasonableness of such a detention is judged not by the standard of probable cause, but by judging the nature and quality of the police intrusion in light of the circumstances known to them at the time. *Terry v. Ohio, supra.* Given the totality of the circumstances, a brief stopping of defendant's vehicle would seem to be conduct wholly within the legitimate investigative sphere. When this is added to the subsequently occurring conduct of defendant, the presence of reasonable cause to stop defendant's car becomes even more obvious. The police had to follow defendant's car with their red lights flashing for more than two blocks; defendant did not stop until forced to do so by a second police car approaching from the front. The police officers then had to repeat their order to the defendant to get out of his vehicle three times before he complied. Of course, after defendant had left the vehicle, the fact that he exactly fitted the description in the revised broadcast plus the discovery of the gun and money, supplied all the probable cause necessary for a full arrest. *State v. Ruiz, supra.* Under these circumstances the trial court correctly denied the motion to suppress.

The judgment and sentence are affirmed.

FROEB, C. J., and JACOBSON, P. J., concur.