80 P.3d 783

John and Maria WOLFINGER, husband and wife, Plaintiffs–Appellants,

Brian Holohan, Attorney–Appellant,

v.

Pasquale R. CHECHE and Nancy Cheche, husband and wife; Pasquale R. Cheche, P.C., an Arizona professional corporation; Stanley and Barbara Lubin, husband and wife; The Law Offices of Stanley Lubin, P.C., an Arizona professional corporation, Defendants–Appellees.

Nos. 1 CA–CV 02–0421, 1 CA–CV 02–0422.

Court of Appeals of Arizona, Division 1, Department A.

Dec. 9, 2003.

Hinshaw & Culbertson, by Brian Holohan, Phoenix, Attorneys for Plaintiffs–Appellants Wolfinger.

Gust Rosenfeld P.L.C., by Richard A. Segal, Phoenix, Attorneys for Plaintiffs–Appellants Holohan and Wolfinger.

Fennemore Craig, P.C., by Kenneth J. Sherk, Douglas C. Northup, Phoenix, Attorneys for Defendants–Appellees Lubin.

Junker, Shiaras & Harrington, by Michael P. Shiaras, Robert Mackenzie, Scottsdale, Attorneys for Defendants–Appellees Cheche.

## OPINION

BARKER, Judge.

¶ 1 This is a complex wrongful institution of civil proceedings ("WICP") claim that draws on thirteen years of litigation between the parties or their clients. As part of this action, we establish that surviving a motion for summary judgment is not a per se bar to a WICP claim and that the subjective intent of the defendant to a WICP claim is irrelevant as long as the claim pursued was objectively reasonable.

### I.

### Facts and Procedural Background

¶ 2 The thirteen-year history here involves three separate lawsuits. While a WICP claim is necessarily a case within a case, here, we extrapolate one level further. We have a WICP of a WICP, a case within a case within a case.

¶ 3 John and Maria Wolfinger ("Wolfinger") appeal from a summary judgment[1] entered against them on their WICP claim

---

1. In addition, Brian Holohan, Wolfinger's attorney, appeals from an order disqualifying him as Wolfinger's trial counsel pursuant to Ethical Rule 3.7. Ariz. R. Sup.Ct. 42, ER 3.7. Because we affirm the grant of summary judgment, we do not reach the issue of the motion to disqualify except as it relates to our Arizona Rule of Civil Procedure 11 findings in the last section of this opinion.

against Pasquale Cheche, his spouse, and Pasquale R. Cheche, P.C. ("Cheche"), and Stanley Lubin, his spouse, and The Law Offices of Stanley Lubin, P.C. ("Lubin").[2]

¶ 4 On appeal from a grant of summary judgment, we determine de novo whether any genuine dispute of material fact exists and whether the trial court correctly applied the law. *Great Am. Mortgage, Inc. v. Statewide Ins. Co.*, 189 Ariz. 123, 124–25, 938 P.2d 1124, 1125–26 (App.1997) (citations omitted). We view the facts in the light most favorable to the party against whom summary judgment was granted. *Estate of Hernandez v. Flavio*, 187 Ariz. 506, 509, 930 P.2d 1309, 1312 (1997). Therefore, we view the facts in a light most favorable to Wolfinger.

¶ 5 In order to understand this matter, we must consider each of the three separate cases. This matter began when Wolfinger, the plaintiff-appellant here, added attorney Peter Strojnik as a defendant in a fraud and racketeering action in what we will term *Case I.*[3] Strojnik had represented one of the defendants already joined in that fraud action. The second suit, *Case II,*[4] is a WICP claim filed by Strojnik against Wolfinger. It is based on Strojnik's allegation that Wolfinger inappropriately brought him into *Case I.* Cheche and Lubin represented Strojnik in *Case II.*

¶ 6 Finally, *Case III* (the case now before this court) is a WICP claim by Wolfinger against Cheche and Lubin for pursuing a WICP claim against him in *Case II.* It is the summary judgment in favor of Cheche and Lubin in *Case III* that is directly at issue here. However, that summary judgment order in *Case III* is inextricably tied to the proceedings in *Cases I* and *II.* We discuss each of the cases in more detail below.

### A. Case I: The Fraud Action

¶ 7 In September 1987, Fred and Elizabeth Wells ("the Wells") leased a 38,000 square foot warehouse from Wood Product Partners ("WPP") for their cabinet manufacturing business, Wood Enterprises. The lease, which covered a five-year term, included an option that allowed the Wells to purchase the warehouse from WPP at anytime. However, in 1989, WPP sought to sell the warehouse as a result of its "cash flow problems." At the same time, as a result of financial problems of their own (i.e. debts resulting from five separate collections lawsuits against them), the Wells agreed to sign a new lease with the new property owner, as long as the Wells received a $90,000 payment.

¶ 8 Shortly thereafter, Americal Properties, a potential buyer, sought to purchase the warehouse from WPP conditioned upon its approval of the Wells' financial condition. In addition, Americal Properties requested that the Wells promise to sign a new, longer term lease. However, ten days after the parties reached an initial agreement, Americal Properties backed out of the deal on the basis that "[t]he tenants [sic] financial statement does not meet our minimum requirement standards."

¶ 9 Following the loss of the first potential buyer, the Wells signed a new lease with WPP that made no reference to the $90,000 purchase option. This lease, however, was designed to take effect only on the sale of the property. In a letter written to the Wells discussing the details of the new lease, David Sellers, a representative of WPP[5], indicated that no mention of the original lease should be made to potential buyers. He wrote:

> To avoid raising any issues with the Buyer which may *queer the deal*, we suggest that all payments and references to the old lease remain outside of escrow. If neces-

---

2. As to Wolfinger, Cheche, Lubin and Strojnik, each of whom are attorneys, we refer to them in the singular throughout by their last name (intending to reference only the attorney by that name) even though either a spouse and/or a professional corporation was also a named party. Except as to damages issues, which we do not reach, the spouses and professional corporations do not play a role in this case.

3. *Valley Citrus Packing Co. v. Wells,* Maricopa County Superior Court Cause Number CV 90–17909.

4. *Strojnik v. Poli & Ball, Ltd.,* Maricopa County Superior Court Cause Number CV 94–14788.

5. WPP was a partnership comprised of JKD Development and Gregory Investments. Sellers was "a principal" member of JKD.

sary to ease your attorney's mind we are willing to sign any further documents between [the seller] and you which may be appropriate.

(Emphasis added.) This "queer the deal" letter was a centerpiece in Wolfinger's argument of fraud. Ultimately, according to the terms of the new lease, the Wells agreed to pay nearly twice as much rent ($1.3 million) as they owed on their old lease over a new seven-year period. However, they were to receive a $90,000 cash disbursement from the proceeds of the sale that would make the lease effective.

¶ 10 In early 1990, a second potential buyer, Kelman, made an offer to purchase the property from WPP. The parties signed a contract. An escrow account was opened at Lawyer's Title and was accompanied with an "Amendment to Escrow Instructions" which instructed the escrow office to disburse $90,000 to Strojnik's trust account. Similar to the first prospective purchaser, however, Kelman backed out of his agreement to purchase the warehouse once he learned of the Wells' financial condition.

¶ 11 In March 1990, Johnson Grove investigated whether it would purchase the warehouse from WPP. WPP suggested to Johnson Grove that "the Wells paid their rent 'like clockwork'," that "the Wells' business was expanding," and that "the Wells had no financial or ownership interest in the building." The Wells confirmed the same to Johnson Grove in person during Johnson Grove's initial tours of the warehouse. Following Johnson Grove's agreement to purchase the property from WPP, an escrow account was opened with Fidelity National Title Agency of Arizona ("Fidelity") to consummate the transaction.

¶ 12 However, in April 1990, (1) to ensure that the Wells received their $90,000 payment from the sale of the warehouse and (2) (as alleged by Wolfinger in the legal proceedings) to keep the fact of the payment hidden from Johnson Grove, Strojnik and WPP agreed that the entire proceeds of the purchase money from Johnson Grove should be deposited into Strojnik's Arizona Bar Foundation Trust Account. Within one or two days following the close of escrow, Strojnik disbursed the $90,000 payment to the Wells and the balance of the sale proceeds to WPP. Strojnik made his payments to the Wells in ten separate $9,000 checks on the same date. The Wells then paid "several thousand dollars" of their $90,000 to Strojnik for the payment of their "outstanding, overdue bills."

¶ 13 Less than one month after Johnson Grove purchased the warehouse (around June 1, 1990), the Wells moved out of the warehouse for "health decisions affecting Mrs. Wells and by a set of other circumstances too numerous to narrate[.]" The Wells admitted their obligation to pay rent to Johnson Grove, but failed to make any payments. Thus, less than a month after purchasing a $1.6 million property, based on the presence of a long-term tenant, the new owners found themselves with a substantial investment, but no tenant.

¶ 14 In 1990, Johnson Grove hired the law firm with which Wolfinger was associated, Poli & Ball, to represent it in a breach of lease lawsuit against the Wells. Several months into the litigation, Johnson Grove and Wolfinger amended the complaint to add claims against Strojnik and his spouse ("Strojnik") for fraud and racketeering. Johnson Grove, through Wolfinger, settled its claims with the title company and the Wells, but not with Strojnik. In 1993, after three years, Johnson Grove allowed its claims against Strojnik to be dismissed for failure to prosecute. It is this dismissal that spawned *Case II.*

### B. Case II: The WICP Against Wolfinger

¶ 15 In 1994, Strojnik retained attorney John Oberg to file a WICP claim against Wolfinger and Poli & Ball based on *Case I.* A year later, Michael Beale replaced Oberg as counsel due to the latter's conflict of interest. After another year, Beale withdrew and Cheche and Lubin became Strojnik's counsel.

¶ 16 Wolfinger moved for summary judgment, arguing that he had probable cause to add the claims against Strojnik in *Case I* and that the lawsuit did not terminate in Strojnik's favor. Judge Ruth Hilliard denied this motion. The court, through Judge Linda Akers, also denied Wolfinger's subsequent

motion for summary judgment on Strojnik's punitive damages claim. The case went to trial in September 1997.

¶ 17 At the close of Strojnik's case-in-chief, Wolfinger moved for a directed verdict on the favorable termination issue and punitive damages. Judge Thomas Dunevant denied the motion as to favorable termination and granted it as to punitive damages. The trial court subsequently declared a mistrial based upon inappropriate testimony from a defense witness. Cheche and Lubin filed a motion to withdraw based upon a conflict of interest, which the trial court granted on September 4, 1998.

¶ 18 After the mistrial, Wolfinger renewed the motion for judgment as a matter of law. Even though prior rulings on the motions for summary judgment and directed verdict determined that there was a jury issue, Judge Dunevant granted the judgment as a matter of law on September 8, 1998, seemingly in contradiction to the prior denials of judgment as a matter of law on the same issues. Strojnik appealed. Wolfinger cross-appealed.

¶ 19 While the appeal was pending, Strojnik made a settlement offer to Wolfinger proposing that (1) the parties dismiss their appeals, (2) Wolfinger release the appeal bond back to Strojnik, and (3) each side bear its own fees and costs. Wolfinger accepted this proposal and the appeal was dismissed. There was never any agreement to vacate the underlying judgment in favor of Wolfinger, and that judgment remained (and remains) in place.

### C. Case III: The WICP Claim by Wolfinger

¶ 20 On September 28, 1999, Wolfinger filed a WICP claim against Strojnik and his former counsel, Cheche and Lubin, alleging that Strojnik's WICP claim, *Case II*, was itself wrongly instituted. Wolfinger sought to recover attorneys' fees, lost earnings, emotional distress damages, and punitive damages. Cheche and Lubin filed summary judgment motions on probable cause. Wol-

finger then moved for summary judgment on favorable termination and probable cause. Cheche and Lubin filed cross-motions on favorable termination. Lubin also moved for summary judgment on the issue of lack of malice. In a minute entry order, Judge John Sticht granted Cheche and Lubin's motions and denied Wolfinger's motions. Judge Sticht determined that because there had been a denial of a motion for summary judgment in *Case II,* there was probable cause as a matter of law for Cheche and Lubin to maintain the WICP claim they pursued in *Case II.* Thus, summary judgment in their favor in *Case III* was entered. It is the appeal of that judgment by Wolfinger that brings the case to us.

¶ 21 The parties also litigated in *Case III* a motion to disqualify Wolfinger's attorneys: Brian Holohan, Daniel Zanon, and the law firm of Holohan Zanon. The trial court granted the motion, but this court (in a prior proceeding)[6] reversed and ordered the defendants to conduct additional discovery, including taking Holohan's deposition. The order permitted a renewal of the motion if the defendants could outline specific evidence adduced from Holohan.

¶ 22 After conducting discovery, the defendants renewed their motion to disqualify. Judge Sticht granted the motion. Holohan separately appealed that order. These separate appeals, of the summary judgment order and the ruling on the motion to disqualify, were then consolidated. Because we affirm on the WICP claim, we do not address the motion to disqualify except as to the Rule 11 issues.[7]

### II.

### Elements of a WICP Claim

■ ¶ 23 To prevail on a WICP claim, a plaintiff must establish five elements: that the defendant "(1) instituted a civil action which was (2) motivated by malice, (3) begun [or maintained] without probable cause, (4) terminated in plaintiff's favor and (5) dam-

---

**6.** *Wolfinger v. Cheche,* 1 CA–SA 00–0125 (Ariz. App. June 3, 2000) (decision order).

**7.** Neither do we address Wolfinger's claim that there was error in failing to strike Cheche's and Lubin's notice of non-party at fault, except as it pertains to Rule 11 issues.

aged plaintiff." *Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 411, 416–17, 758 P.2d 1313, 1318–19 (1988) (citing *Carroll v. Kalar*, 112 Ariz. 595, 596, 545 P.2d 411, 412 (1976)). Three elements of this tort are at issue here: probable cause, favorable termination, and malice. Specifically, the issue is whether Cheche and Lubin are entitled to judgment as a matter of law on any one of these elements. If Wolfinger fails on any one element, Wolfinger's claim fails.

¶ 24 As discussed below, we find that Cheche and Lubin had probable cause as a matter of law. Accordingly, we do not address favorable termination or malice at length. We address those elements only with regard to Arizona Rule of Civil Procedure 11 ("Rule 11") issues that pertain to this case.

## III.

### The Probable Cause Standard

#### A. Question of Law or Question of Fact?

■ ¶ 25 Our law provides a potential role for both the court and a jury in resolving a WICP claim. In *Smith v. Lucia*, 173 Ariz. 290, 294, 842 P.2d 1303, 1307 (App.1992), the court set forth that in Arizona, the law is " 'well developed and clear' that probable cause is *always* a question of law to be determined by the court." (quoting *Carroll*, 112 Ariz. at 598, 545 P.2d at 414) (emphasis added). The *Smith* court explained that "[i]f the operative facts are undisputed, the existence of probable cause is a question of law to be determined *solely* by the court." *Id.* at 295, 842 P.2d at 1308 (quoting *Bradshaw*, 157 Ariz. at 419, 758 P.2d at 1321) (emphasis in original). Thus, even though the language from *Smith* provides that the question of probable cause is "always" a question of law for the court, this is limited to circumstances when "the operative facts are undisputed." The *Carroll* court previously explained:

> The law in this State is well developed and clear. In *Sarwark Motor Sales, Inc. v. Woolridge*, 88 Ariz. 173, 354 P.2d 34 (1960), the court pointed out that the precise roles played by the court and jury in resolving the question of law as to probable cause were set forth in *Murphy v. Russell*, 40

Ariz. 109, 9 P.2d 1020 (1932). Whether a given set of facts constitutes probable cause is always a question of law to be determined by the court. The only function of the jury is to determine what the actual facts are if the facts are conflicting. *If from one set of facts the conclusion can be inferred that probable cause exists, and from another that it does not, it is for the jury to determine the true state of facts.*

112 Ariz. at 598–99, 545 P.2d at 414–15 (emphasis added). The standard of review for considering a motion for summary judgment is that the facts are viewed in the light most favorable to the party against whom summary judgment was granted. *Flavio*, 187 Ariz. at 509, 930 P.2d at 1312. However, as to the element of probable cause in a WICP claim, that is always a question of law for the court unless there are conflicting facts such that the facts need to be resolved in order to determine whether probable cause exists. *Carroll*, 112 Ariz. at 598–99, 545 P.2d at 414–15.

#### B. The Role of Objective versus Subjective Considerations in a WICP Claim

■ ¶ 26 Arizona case law presently provides that determination of the presence or absence of probable cause is a two-fold inquiry requiring consideration of both objective and subjective factors. The current test is: (1) whether the claim is objectively reasonable; and (2) whether the proponent of the claim had a subjective belief in its merits. *Bradshaw*, 157 Ariz. at 417, 758 P.2d at 1319. We agree, however, with Cheche and Lubin that if the subjective belief prong is treated as being required in every case, then it is unconstitutional, as held by the United States Supreme Court in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993).

¶ 27 In *Columbia Pictures*, the Court specifically addressed probable cause in a WICP claim. 508 U.S. at 60–63, 113 S.Ct. 1920. It explained that the initial inquiry was whether the action was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* at 60, 113 S.Ct. 1920. The Court then deter-

mined that "[o]nly if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Id.* Thus, we hold that the *Columbia Pictures* decision precludes us from considering the subjective prong of probable cause as identified in the *Bradshaw* case unless we determine that the action was not objectively reasonable.

### C. What Is the Standard for Determining Whether a Claim Is Objectively Reasonable for Purposes of Probable Cause in a WICP Proceeding?

¶ 28 In *Smith v. Lucia,* this court held that the appropriate test for determining whether an lawyer's conduct was objectively reasonable was: "[U]pon the appearances presented ... would a reasonably prudent [lawyer] have instituted or continued the proceeding?" 173 Ariz. at 297, 842 P.2d at 1310 (quoting *Carroll,* 112 Ariz. at 596, 545 P.2d at 412) (alteration in original). *Smith* went on to note that "[u]nfortunately, however, our case law does not tell us how to measure this standard." *Id. Smith* then resolved the issue by incorporating the standard followed in federal and Arizona cases interpreting Rule 11:

> Cases decided under Rule 11, Federal Rules of Civil Procedure, which is identical to Rule 11, Arizona Rules of Civil Procedure, are helpful in determining the standard by which we may measure the reasonableness of an attorney's conduct.... We can conclude that the Rule 11 objective standard should apply here.

*Id.* We follow this formulation of the standard as provided in *Smith.*

¶ 29 Generally, to properly institute a civil claim, Rule 11 requires that before signing a pleading, an attorney must "possess a good faith belief, formed on the basis of a reasonable investigation, that a colorable claim or defense exists." *James, Cooke & Hobson, Inc. v. Lake Havasu Plumbing & Fire Prot.,* 177 Ariz. 316, 319, 868 P.2d 329, 332 (App.1993). Rule 11 provides in pertinent part:

> that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry [a pleading] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Ariz. R. Civ. P. 11(a). "Under Rule 11, an attorney violates the objective standard when: (1) there was no reasonable inquiry into the basis for a pleading or motion; (2) there was no chance of success under existing precedent; and (3) there was no reasonable argument to extend, modify, or reverse the controlling law." *Smith,* 173 Ariz. at 297, 842 P.2d at 1310.

### D. Does Surviving a Motion for Summary Judgment Establish, as a Matter of Law, that a Claim was Objectively Reasonable?

¶ 30 The trial court, in *Case III,* determined that the WICP claim filed by Cheche and Lubin *(Case II)* was objectively reasonable as a matter of law because it survived summary judgment. · The trial court ruled as follows on this issue:

> The Court concludes that because the underlying case survived motions for summary judgment on the issue of probable cause and survived a motion for judgment as a matter of law on the issue of probable cause that, as a matter of law there was a reasonably objective basis for filing and prosecuting the litigation.

¶ 31 While this rationale may be *descriptively* accurate of most cases, it is too broad a proposition to adopt as a rule of law. In short, it adopts an all-encompassing rule that surviving a motion for summary judgment necessarily means that there was probable cause for the action. We recognize that there is authority from other jurisdictions for that proposition. *Roberts v. Sentry Life Ins.,* 76 Cal.App.4th 375, 90 Cal.Rptr.2d 408, 413 (App.1999) ("[A] judge's denial of summary judgment accurately predicts that reasonable lawyers would find a case arguably meritorious."); *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1080 (8th Cir.1999) (denial of summary judgment "is fatal" to a subsequent WICP claim as "it follows that there was

probable cause."); *Nobelpharma Ab v. Implant Innovations, Inc.,* 930 F.Supp. 1241, 1255 (N.D.Ill.1996) ("An action that is well enough grounded, factually and legally, to survive a motion for summary judgment is sufficiently meritorious to lead a reasonable litigant to conclude that they had some chance of success on the merits.") (quoting *Harris Custom Builders, Inc. v. Hoffmeyer,* 834 F.Supp. 256, 261–62 (N.D.Ill.1993)). We also recognize the unmistakable, logical attraction to the argument: how could a claim survive summary judgment if it did not have at least *some* merit? Despite the obvious attraction of the argument, however, there are clear problems in adopting the proposed rule on a "bright-line" basis.

¶ 32 Initially, we note there is a line of authority that provides that a grant of summary judgment is not, standing alone, a guarantor that a case survives a subsequent WICP claim or Rule 11 sanction. For example, in *Nielsen v. Trans World Airlines, Inc.,* 95 F.3d 701, 703 (8th Cir.1996), following an award of attorney fees pursuant to Federal Rule of Civil Procedure 11, the Eighth Circuit decided that "the mere fact that one of plaintiff's claims survived a motion for summary judgment and a Federal Rule of Civil Procedure 52(c) motion at trial for judgment on partial findings does not preclude the imposition of attorney fees." In a similar case, *Union Planters Bank v. L & J Development Co.,* 115 F.3d 378, 385 (6th Cir.1997), the Sixth Circuit considered whether a litigant who survived summary judgment by giving false testimony could insulate himself from Rule 11 sanctions. As in *Nielsen,* the court concluded that he could not, stating that "litigants cannot avoid sanction under [Rule 11] simply by defeating summary judgment on the basis of false evidence." *Union Planters Bank,* 115 F.3d at 386.

¶ 33 Another difficulty in applying the absolute rule adopted by the trial court, and argued for by Cheche and Lubin here, is that in this particular case the ultimate conclusion in *Case II* was a judgment as a matter of law, on a more fully developed record, that was exactly the *opposite* of the earlier denial of summary judgment and directed verdict on the case. We have, in essence, conflicting rulings as a matter of law.

¶ 34 Arizona law does not directly address whether surviving a summary judgment motion, standing alone, is sufficient to establish that an action is objectively reasonable as a matter of law for purposes of defeating a WICP claim. The *Bradshaw* case dealt with this issue, but it was primarily in terms of the subjective component of probable cause. 157 Ariz. at 417–18, 758 P.2d at 1319–20. *Bradshaw* states:

> We disagree with the court of appeals' holding that probable cause exists as a matter of law merely because at the time an action is filed there is some evidence that will withstand a motion for summary judgment. Such a rule, we believe, would be unwise because it would permit people to file actions they believed or even knew to be unfounded simply because they could produce a scintilla of evidence sufficient to withstand a motion for summary judgment. . . . The proper test is subjective *and* objective.

*Id.* at 417, 758 P.2d at 1319 (citations omitted). For the reasons we discussed earlier, *Bradshaw* notwithstanding, the subjective component of a probable cause analysis in a WICP claim does not come into play unless the claim is not objectively reasonable. *Supra* at ¶¶ 26–27.

¶ 35 Cheche and Lubin also argue, however, that another aspect of *Bradshaw* supports their view that surviving summary judgment means a claim is objectively reasonable as a matter of law. They point to the change in law as to the standard of determining whether a claim should be subject to summary judgment. At the time *Bradshaw* was announced in 1988, Arizona law required that a summary judgment be defeated if there was a "scintilla of evidence" to support the claim being advanced. 157 Ariz. at 417, 758 P.2d at 1319. Cheche and Lubin correctly point out that this is no longer the case. Since the *Orme School* decision in 1990, an Arizona litigant cannot, they assert, prevail on a summary judgment motion unless that person meets a higher standard. *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000,

1008 (1990). Specifically, summary judgment may now be granted

> if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim[.]

*Id.* Cheche and· Lubin also point out that the purpose of the raised standard in *Orme School* was to weed out "meritless claims." *Id.*

¶ 36 We agree that the raised standard from *Orme School* was indeed intended to act as a screen against meritless claims and that it in fact does so. We do not agree, however, that under *all* circumstances surviving a motion for summary judgment means that a claim is objectively reasonable. *Orme School* itself leaves open a door for a claim to survive summary judgment even *without* a genuine issue of material fact. The *Orme School* court stated:

> Our decision today does not alter the traditional rule that although courts have no discretion to grant summary judgment if the standard is not met, *they can deny summary judgment even where there is apparently no genuine dispute over any material fact.* In this sense, our standard is not a "mirror" of the directed verdict standard under rule 50(a) of the Federal Rules of Civil Procedure, which *requires* the trial judge to direct a verdict if there can be only one reasonable conclusion as to the verdict.

166 Ariz. at 309 n. 11, 802 P.2d at 1008 n. 11 (first emphasis added) (citation omitted). This power from *Orme School,* to "deny summary judgment even where there is apparently no genuine dispute over any material fact," *id.,* construes our civil rule pertaining to summary judgments:

> The judgment sought *shall be rendered forthwith* if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.*

Ariz. R. Civ. P. 56(c) (emphasis added). Thus, notwithstanding the language of Rule 56(c), that summary judgment "shall be rendered forthwith" if there is no disputed issue of fact, *Orme School* expressly allows a summary judgment to be *denied* even when there is no disputed issue of fact. 166 Ariz. at 309 n. 11, 802 P.2d at 1008 n. 11. In such a legal context, and while we would certainly hope the occurrences would be rare, a meritless claim could survive. Thus, to adopt a rule that a denial of summary judgment requires a finding that a claim was objectively reasonable in *all* circumstances (based on meeting a certain evidentiary threshold) would be contrary to *Orme School* and not within our ability to direct. *See State v. Korte,* 115 Ariz. 517, 520, 566 P.2d 318, 321 (App.1977) (this court has no authority to depart from controlling decisions of the Arizona Supreme Court).

¶ 37 Further, separate and apart from the issue created by *Orme School's* interpretation of Rule 56(c), there is the scenario of false or recanted evidence that may be used to defeat a motion for summary judgment. As the *Union Planters Bank* line of cases attests, *supra* at ¶ 32, the prospect of false or misleading evidence is, unfortunately, real. Under such circumstances, judgment as a matter of law based on surviving a summary judgment motion may not only be inappropriate but directly contrary to the purpose of a WICP claim.

¶ 38 Finally, in this case there was both the *denial* of a summary judgment and then the subsequent *granting* of a judgment as a matter of law. While, as we discuss below, the earlier denial of summary judgment may be evidence of objective reasonableness, it is difficult to consider it dispositive on the issue when a subsequent legal ruling is directly contrary and casts in doubt the basis for the earlier denial. This circumstance, clearly present here, is another reason why the denial of summary judgment alone is not necessarily dispositive of the probable cause issue.

■ ¶ 39 For all the above reasons, we believe the better rule, and the one we adopt here, is that the defeat of a motion for summary judgment is a *factor* that the court should consider in determining whether

there is or is not an objectively reasonable basis for a claim or defense; the denial is not, standing alone, *dispositive* of the issue as a matter of law. The trial court must consider the test for objectively reasonable conduct as set forth in this and other appellate opinions. As we show below, the court may still enter judgment as a matter of law if appropriate under the facts of the particular case, but it must be based upon utilizing this test.

## IV.

*Applying the Probable Cause Standard: Was Cheche and Lubin's Pursuit of the WICP Claim in Case II Objectively Reasonable as a Matter of Law?*

¶ 40 Having rejected the trial court's view, and appellees' primary argument, that summary judgment alone mandates a determination in favor of Cheche and Lubin, we now consider whether the WICP claim they pursued was objectively reasonable. To repeat, the applicable standard, similar to Rule 11, is whether "(1) there was no reasonable inquiry into the basis for [pursuing *Case II*]; (2) there was no chance of success under existing precedent; and (3) there was no reasonable argument to extend, modify, or reverse the controlling law." *Smith*, 173 Ariz. at 297, 842 P.2d at 1310.

■ ¶ 41 Before embarking on this analysis, we must return to the concept of a case within a case (and again) within a case. The claim for which Cheche and Lubin assert

they have an objectively reasonable basis is the WICP claim against Wolfinger (*Case II*). This claim is based upon Wolfinger's handling of the initial fraud claim (*Case I*). If Cheche and Lubin do not, as a matter of law, have an objectively reasonable basis for the WICP claim they filed *against* Wolfinger (*Case II*), they are subject to the WICP claim filed *by* Wolfinger (*Case III*). The elements of a WICP claim, noted earlier, are that a person "(1) instituted a civil action which was (2) motivated by malice, (3) begun [or maintained] without probable cause, (4) terminated in plaintiff's favor and (5) damaged plaintiff." *Bradshaw*, 157 Ariz. at 416–17, 758 P.2d at 1318–19. Thus, we must return to an examination of *Case II* to see if there was a reasonably objective basis for Cheche and Lubin to believe that Wolfinger's conduct in *Case I* provided a factual basis for the WICP claim against Wolfinger. As a practical matter, Wolfinger puts two elements at issue: probable cause and favorable termination.[8]

¶ 42 As to these two elements, the issue is whether Cheche and Lubin had facts that a reasonable person would not consider "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Columbia Pictures*, 508 U.S. at 60, 113 S.Ct. 1920. In Arizona, as noted earlier, *supra*, ¶¶ 29–30, we consider the following to determine whether the standard was met: (a) reasonable inquiry, (b) no chance of success and (c) the modification of existing law.

---

8. As to the other three elements, Wolfinger does not argue that there is a fact question as to either (1) the institution of a civil action or (2) malice. Accordingly, we consider those issues waived. *Schabel v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 167, 920 P.2d 41, 47 (App.1996). Even if not waived, however, there was a civil action instituted (element one), and for the reasons set forth in the discussion of probable cause and favorable termination, there is an objectively reasonable basis for a judgment as a matter of law on malice (element two). See *Smith*, 173 Ariz. at 295, 297, 842 P.2d at 1308, 1310 (finding probable cause as a matter of law and noting that while probable cause and malice are separate elements, lack of probable cause may provide the basis for malice, but not vice versa).

  As to damages (element five), Wolfinger does make an argument. Much of the argument is, in our view, actually in the context of whether there

was an objectively reasonable basis for the WICP claim generally and falls under the probable cause element discussed at length *infra*. To the extent the argument goes solely to the element of damages, it is not persuasive. The argument, essentially, is that the damages claim was so inflated and contradictory that Cheche and Lubin should have known it was bogus. Wolfinger misses the point. There is a difference between the *extent* of a damages claim, and the *fact* of damages. *Coury Bros. Ranchers, Inc. v. Ellsworth*, 103 Ariz. 515, 521, 446 P.2d 458, 464 (1968). Certainly there are fact questions on the *extent* of the damages here. However, on the *fact* of damages to a practicing attorney who has been sued in fraud for dealings in his professional capacity on behalf of a client, we have little difficulty in determining as a matter of law that the element has been established in this case.

## A. Reasonable Inquiry

¶ 43 As to reasonable inquiry, we note documentation of the extensive review of *Case I* done by both Cheche and Lubin. This included paralegal review of multiple banker's boxes of information, consultation with attorneys who had previously represented Strojnik with regard to the same matter, associate research (and personal analysis and review) of applicable case law and standards, and the fact that the present posture of the case was that a motion for summary judgment brought by Wolfinger on key elements of the case had been denied. We do not find two sets of "operative facts," on either the issue of probable cause or favorable termination, such that these issues needed to be submitted to a jury to determine whether there was a reasonable inquiry. *Bradshaw*, 157 Ariz. at 419, 758 P.2d at 1321. We find the facts to be those that a trial judge would typically consider in making this decision without the assistance of a jury.

¶ 44 We note, however, that regardless of the extent of the inquiry, if it fails to disclose facts of significance (when applied to the law in question) which reasonably should have been discovered, reasonable inquiry may still be lacking or present a jury question. As a practical matter, it is problematic to consider the three prongs for objective reasonableness in anything other than an interrelated fashion. Accordingly, we turn to the second prong of the test.

## B. No Chance of Success

¶ 45 The second prong we consider is whether Cheche and Lubin had "no chance of success under existing precedent." *Smith*, 173 Ariz. at 297, 842 P.2d at 1310. Unlike the "reasonable inquiry" prong of the test, we consider separately whether Cheche and

Lubin had a chance of success on the distinct issues of whether there was (a) lack of probable cause by Wolfinger in filing the fraud action, and (b) favorable termination to Strojnik in the fraud action.

### 1. Lack of Probable Cause for the Fraud Action in Case I

¶ 46 As noted above, we decline to hold that the denial of a motion for summary judgment is dispositive. We must nonetheless consider that the facts of the WICP claim against Wolfinger were presented to three separate superior court judges. Each of their decisions, either explicitly or implicitly, left a question of fact for a jury on the issue of lack of probable cause for Wolfinger to file *Case I*.[9] None of the judges cited to the footnote from *Orme School* that allows them to deny a summary judgment motion without a genuine issue of material fact. 166 Ariz. at 309 n. 11, 802 P.2d at 1008 n. 11. The denial of summary judgment under such circumstances certainly is evidence of an objective basis to believe there is better than "no chance of success" on the merits. We also note the fact that after the presentation by Cheche and Lubin of the plaintiff's case-in-chief in *Case II* as part of a fourteen-day trial, a directed verdict in Wolfinger's favor on favorable termination was denied and the WICP claim left to the jury.

¶ 47 We do recognize that the third of these judges, Judge Dunevant, also entered judgment as a matter of law in favor of Wolfinger. However, and of substantial significance to us, this change in ruling by Judge Dunevant was not based upon prior evidence subsequently determined to be false. *Cf. Union Planters Bank*, 115 F.3d at 385. The decision was based upon Judge Dunevant's view that a determination of

---

9. On July 22, 1996 Judge Hilliard denied a motion for partial summary judgment where the direct issue was "whether the defendants [Wolfinger and Poli & Ball] had an objective basis for believing that it could win a lawsuit against Strojnik." Judge Hilliard found a question of fact and denied the motion for summary judgment. This is the motion upon which Judge Sticht relied in determining that Cheche and Lubin had probable cause to file the WICP claim. Second, also in *Case II*, Judge Akers denied Wolfinger's motion for summary judgment on the

claim for punitive damages against him. Obviously, a trial judge could not deny a claim for punitive damages as to Wolfinger (absent the caveat in *Orme School, supra* at ¶ 36, which Judge Akers did not utilize) if the judge had not determined that there was at least a question of fact as to Wolfinger's liability for damages. Third, Judge Dunevant also denied a motion for directed verdict as to favorable termination on October 8, 1997, leaving the question of probable cause for the jury.

probable cause (as well as favorable termination) was a matter of law for the court to determine because our case law left that determination to the court (not the jury) and the jury's assistance was not needed to resolve any facts. Judge Dunevant noted: "Generally, the court, not the jury, decides favorable termination because favorable termination is a legal question.... Probable cause is a legal question as well. The court, not the jury, decides the probable cause element." Thus, even though there was an eventual judgment as a matter of law (on both probable cause and favorable termination), we do not find that such a determination meant that Cheche and Lubin's claim had no merit. It only meant that the operative facts were not in such a state of conflict that assistance from a jury was needed before the court could determine whether there was probable cause. We agree with Judge Dunevant's conclusion as to this case.

¶ 48 Here, while Judge Sticht (in *Case III*) incorrectly determined that the denial of summary judgment *mandated* a finding of probable cause, that denial is certainly a factor that must be *considered* in determining whether there is probable cause. In this case, there were other facts that warranted Judge Sticht's conclusion, as a matter of law, that probable cause for maintaining the WICP claim in *Case II* was present: Strojnik denied any knowledge of a scheme to defraud; Strojnik's actions were all legal and survived the scrutiny of a Bar complaint; the key evidence (the "queer the deal" letter) was never tied to Strojnik; the burden of proof for proving fraud was clear and convincing evidence; and all the evidence against Strojnik was circumstantial. Combining these facts with the denial of two summary judgments and the fact that this case also survived a directed verdict at the conclusion of the case-in-chief provided an adequate factual record for Judge Sticht (and this court on de novo review) to find probable cause without the assistance of a jury. As a matter of law, on these facts, Cheche and Lubin had at least some prospect of success on the issue of probable cause.

**2. *Favorable Termination in the Fraud Action in* Case I**

¶ 49 The second argument as to why Cheche and Lubin would not have probable cause to pursue *Case II* is that there was no factual basis for a termination favorable to Strojnik in *Case I*. Judge Dunevant ultimately concluded there was no favorable termination when he ruled against Strojnik in *Case II*, even though both he and Judge Hilliard had previously denied motions on this issue.

¶ 50 A dismissal of an action without a determination on the merits may still be a basis for a finding of favorable termination in a WICP claim. This proposition flows from *Bradshaw*, where the court found that "[n]otwithstanding dismissal of the action, settlement may be a favorable termination." 157 Ariz. at 419, 758 P.2d at 1321; *see also Giles v. Marce*, 195 Ariz. 358, 362, ¶ 12, 988 P.2d 143, 147 (App.1999) ("Even though the underlying case was concluded by a settlement, rather than an adjudication on the merits, the termination may nonetheless be favorable to the plaintiff.").

¶ 51 More directly, in *Frey v. Stoneman*, 150 Ariz. 106, 110, 722 P.2d 274, 278 (1986), our supreme court expressly determined that "[a] dismissal for failure to prosecute is not procedural, and is a favorable termination which indicates the innocence of the accused *if* it reflects on the merits of the action." This is consistent with the Restatement:

> Civil proceedings may be terminated in favor of the person against whom they are brought ... by (1) the favorable adjudication of the claim by a competent tribunal, or (2) the withdrawal of the proceedings by the person bringing them, or (3) *the dismissal of the proceedings because of his failure to prosecute them.*

Restatement (Second) of Torts § 674 cmt. j (1977) (emphasis added). *Frey* directly acknowledged: "The Restatement makes clear that a withdrawal or a failure to prosecute is favorable in fact only when shown to be so by the surrounding circumstances." 150 Ariz. at 111 n. 7, 722 P.2d at 279 n. 7. "The question is whether, *under the particular circumstances and merits of the underlying*

*case,* termination was actually favorable." *Id.* at 110, 722 P.2d at 278 (emphasis added).

¶ 52 Wolfinger argues that there is no statement or indication on his behalf (or anyone associated in bringing *Case I* ) that could be construed to show that he or his client allowed the matter to be dismissed for any reason other than expenses of pursuing the litigation. Wolfinger claims that this affirmatively shows that the dismissal did not "reflect on the merits of the matter." Wolfinger argues that "[t]here was no basis to believe that the manner in which [*Case I* ] was abandoned indicated anyone at Johnson Grove thought Strojnik would win." The court in *Frey* held that "[w]hen a termination or dismissal *indicates in some fashion that the accused is innocent* of wrongdoing it is a favorable termination." *Id.* Wolfinger asserts, based on the lack of direct evidence showing Strojnik's innocence and Johnson Grove's (and Wolfinger's) subjective belief in the claim, that Cheche and Lubin had no basis for this element of their claim.

¶ 53 We state again that to survive objective reasonableness under Rule 11/WICP standards, the hurdle one must clear (though real) is not great. There must be "no chance of success under existing precedent." *Smith,* 173 Ariz. at 297, 842 P.2d at 1310. Here, there was such a chance.

¶ 54 We need only hearken back to the initial circumstances under which Strojnik was brought into the case. As Judge Akers noted, there were facts from which a jury could conclude that the purpose of bringing Strojnik into the case was not based on potential liability as to Strojnik, but the need to obtain further information against the Wells and the title company. Consistent with that theory, Cheche and Lubin could easily argue that having obtained a settlement against the Wells and the title company, Wolfinger and Johnson Grove let the case against Strojnik lapse as it had served its purpose: facilitating a settlement against the arguably legitimate defendants but with no real claim against Strojnik. As to success on the mer-

its, while Wolfinger obtained evidence of fraud (or conspiracy to commit fraud on the part of Strojnik), all of it was circumstantial, much of it could not be tied directly to Strojnik (i.e. the "queer the deal" letter), and the burden of proof which Wolfinger must meet to prevail on the merits was one of clear and convincing evidence. *Enyart v. Transamerica Ins. Co.,* 195 Ariz. 71, 77, ¶ 18, 985 P.2d 556, 562 (App.1998). Strojnik could have defeated that claim. Thus, the length of time the case was prosecuted, the extent of the discovery, the evidence of improper purpose for the filing of the suit, and the prospect of a failure to meet the burden of proof all work to create a factual basis for a claim of "favorable termination."

¶ 55 In *Frey,* the court made it clear that "there is *no bright line* which can be drawn to determine when a termination on less than adjudication of the merits is favorable." 150 Ariz. at 110, 722 P.2d at 278 (emphasis added). It recognized "where there has been no adjudication on the merits the existence of a 'favorable termination' of the prior proceeding generally must be found in the substance rather than the form of prior events and often involves questions of fact.... If the action was dismissed because of voluntary withdrawal or abandonment by the plaintiff, the finder of fact may well determine that this was, in effect, a confession that the case was without merit." *Id.* at 111, 722 P.2d at 279.

¶ 56 Consistent with the foregoing, Cheche and Lubin survived not only summary judgment but a directed verdict on the issue of favorable termination.[10] "[U]nder the particular circumstances and merits of the underlying case," *id.* at 110, 722 P.2d at 278, as well as the fact that this case was taken by Cheche and Lubin after a summary judgment on this very issue had been denied, we are not persuaded that there was such a lack of evidence on favorable termination in *Case I* to show there was no prospect for success on this element.

---

**10.** In *Lane v. Pillinger,* 189 Ariz. 152, 939 P.2d 430 (App.1997) we also applied *Frey* but came to the conclusion that there was no favorable termination as a matter of law. The fact that Cheche and Lubin survived motions for summary judgment and directed verdict on favorable termination as to *Case I* distinguishes this matter from *Lane.*

## C. Modification of Existing Law

¶ 57 As to the third prong of the Rule 11/WICP objective reasonableness analysis ("no reasonable argument to extend, modify, or reverse the controlling law," *Smith,* 173 Ariz. at 297, 842 P.2d at 1310), we find no argument other than that which we have addressed under the second prong of prospect for success on existing precedent. *Supra* at ¶¶ 45–56.

## D. Summary as to Objective Reasonableness of Case II

¶ 58 To conclude with this section, we determine as a matter of law, on de novo review, that there was probable cause for Cheche and Lubin to pursue *Case II.* The facts of record show the WICP claim against Wolfinger was objectively reasonable as defined by Arizona law. This is so even though the ultimate result in *Case II* was a ruling as a matter of law in favor of Wolfinger. We may affirm a trial judge for a different reason if we conclude that although the entry of judgment on the stated grounds was inappropriate, other reasons appropriately call for judgment as entered. *State v. Nadler,* 129 Ariz. 19, 21–22, 628 P.2d 56, 58–59 (App. 1981); *State v. Burnley,* 114 Ariz. 300, 302, 560 P.2d 818, 820 (App.1977). We do so here.

¶ 59 As lack of probable cause is a necessary element of the WICP claim raised by Wolfinger in *Case III,* we are not required to address the other elements of the claim. However, because of the thirteen-year history of this litigation, and due to our grant of authority under Rule 11, we address the remaining issues to the extent discussed in the section below.

## V.

### Rule 11 as Applied to the Parties'/Attorneys' Conduct in Case III

¶ 60 We want to be direct in indicating that (1) Judge Dunevant was correct in

concluding *Case II* in favor of Wolfinger as a matter of law and (2) notwithstanding Judge Dunevant's ruling as a matter of law, there was probable cause for the filing and pursuit of *Case II* by Cheche and Lubin as it complied with Rule 11. We make the same determination as to Rule 11 on the WICP claim brought by Wolfinger (*Case III* ). Rule 11 authorizes us to determine matters under that rule "upon motion or upon [the court's] *own initiative.*" Ariz. R. Civ. P. 11(a) (emphasis added). By virtue of this appeal, *Case III* has been concluded by a motion for summary judgment. We now also determine that there was compliance with Rule 11 for the filing and pursuit of this action by Wolfinger.

¶ 61 We have the full record of *Case III* before us and have comprehensively reviewed the file which contains the pertinent portions of *Cases I* and *II.* Our present record comprises twenty-four separate volumes from the superior court. We find there was, and is, an objectively reasonable basis for Wolfinger's and his counsel's filing and pursuit of *Case III.* We find that there was, and is, a sufficient factual and legal basis on each of the elements present in this WICP claim against Cheche and Lubin to pass Rule 11 scrutiny. Thus, we affirmatively hold that *Case III* (including the issues surrounding the motion to disqualify) complied with Rule 11.

## VI.

### The Dissent

¶ 62 The primary position taken by the dissent is that (1) we have given "undue weight" to the ruling on the summary judgment by Judge Hilliard and that (2) Wolfinger had some chance of success in *Case I* so summary judgment against him in *Case III* was inappropriate.[11]

---

11. The dissent also asserts that we should not affirm because the only fact presented to Judge Sticht in support of Cheche and Lubin's motion for summary judgment was Judge Hilliard's denial of summary judgment. We disagree with this assessment of the record. At a minimum, Cheche and Lubin clearly invited Wolfinger to

set forth, as Wolfinger did, any fact that would controvert the claim that there was not probable cause for filing *Case II.* The substantive facts underlying each of the three trial judges' rulings (Hilliard, Akers and Dunevant) were clearly of record. We review the grant of a summary judg-

¶ 63 First, we find the criticism of giving "undue weight" to Judge Hilliard's ruling to essentially be a request that we ignore it. We cannot. It is a fact that we must consider in this de novo review. Additionally, as we pointed out earlier, Judge Hilliard was one of three separate trial judges who found fact questions preventing summary disposition on the claim Cheche and Lubin pursued against Wolfinger. *Supra* ¶ 46, n. 8. The rulings of superior court judges—who read, analyze and then deny motions for summary judgment when the presence of a question of fact is directly at issue—simply cannot be ignored. The dissent's position, that Judge Hilliard also denied a motion for summary judgment *brought by* Cheche and Lubin, *infra* at ¶ 69, surely cannot mean that they did not have probable cause for the claim itself, which survived opposing counsel's dispositive motions. In short, we view the dissent's posture as essentially asking us to ignore what may well be the best evidence on the issue: the multiple opinions of in-the-trenches trial judges who are duty bound to impartially consider the issues. As we previously discussed, *supra* at ¶¶ 30–39, the rulings must be considered but they are not controlling. When combined with the other facts in this case, *see, e.g., supra* at ¶ 48, they demonstrate that Cheche and Lubin were entitled to judgment as a matter of law.

¶ 64 Second, that Wolfinger (as the attorney for Johnson Grove) may have had some facts showing that he had a chance of success in *Case I* is not the controlling determination at this stage, due to the shift in the burden of proof. The critical question for us is whether Cheche and Lubin, in maintaining *Case II*, had facts at their disposal showing that they had an objectively reasonable basis for proving the *contrary* position (that Wolfinger had no chance of success). *Supra* at ¶ 23. If they had such facts, and as we pointed out above, *supra* at ¶¶ 40–48, we believe that they did, then they are entitled to summary judgment in *Case III*. It is for this same

reason that Wolfinger was entitled to (and eventually received) a judgment as a matter of law in *Case II*. As Judge Dunevant correctly pointed out in ruling in Wolfinger's favor in *Case II:* "Plaintiffs [Cheche and Lubin] failed to offer sufficient evidence during their case in chief from which the court could conclude as a matter of law that there was an *absence* of objective probable cause." [12] (Emphasis added.)

¶ 65 Thus, Cheche and Lubin, as attorneys representing plaintiffs in *Case II,* were unable to meet their burden of showing no objectively reasonable basis on the part of Wolfinger in *Case I.* In the identical context, Wolfinger, now as a plaintiff in *Case III* and not as a defendant as he was in *Case II,* is unable to meet his burden of showing no objectively reasonable basis on the part of Cheche and Lubin for their ultimately unsuccessful pursuit of *Case II.* In this case, Wolfinger had the burden of showing facts such that Cheche and Lubin's conduct was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Columbia Pictures,* 508 U.S. at 60, 113 S.Ct. 1920; *see also supra* at ¶¶ 28, 40, 42. This Wolfinger did not do. Accordingly, Cheche and Lubin are entitled to summary judgment.

### *VII.*

### *Conclusion*

¶ 66 For the reasons given above, the entry of summary judgment is affirmed. We further affirmatively determine that this matter was filed and pursued in compliance with Rule 11.

CONCURRING: WILLIAM F. GARBARINO, Judge.

TIMMER, Judge, dissenting.

¶ 67 I agree with the Majority that the trial court erred by ruling that Cheche and Lubin had probable cause as a matter of law in *Case II* to maintain the WICP claim

---

ment de novo on the basis of the record before us. *Flavio,* 187 Ariz. at 509, 930 P.2d at 1312.

**12.** The reference to "matter of law" in this excerpt is in the context of a decision on a WICP

claim that is committed to the trial court unless there are differing sets of "operative facts" as discussed earlier. *Supra* at ¶ 25.

against Wolfinger solely because the court had denied Wolfinger's cross-motion for summary judgment in that case. *See* ¶¶ 30–31, 39, *supra*. I part ways with my colleagues, however, when they decide that the trial court nevertheless properly entered summary judgment because the uncontested material facts demonstrated that Cheche and Lubin possessed probable cause to maintain the WICP claim. I therefore respectfully dissent.

¶ 68 The Majority cites two reasons for deciding as a matter of law that Cheche and Lubin possessed probable cause in *Case II* to believe that Wolfinger lacked probable cause to sue Strojnik in *Case I*. First, the Majority gives undue weight to Judge Hilliard's denial of Wolfinger's cross-motion for summary judgment on the issue of probable cause. *See* ¶ 46, *supra*. Second, they point to evidence demonstrating the weakness of Wolfinger's case against Strojnik in *Case I. See* ¶ 48, *supra*. Neither factor establishes as a matter of law that Cheche and Lubin had probable cause to believe that Wolfinger lacked probable cause to bring and maintain *Case I* against Strojnik.

¶ 69 Judge Hilliard's denial of Wolfinger's cross-motion for summary judgment bears little weight on the issue of probable cause to maintain *Case II*. At the same time Judge Hilliard denied the cross-motion, she denied a motion for summary judgment filed by Cheche and Lubin on the probable cause issue. In the joint ruling, the judge stated that no party was entitled to summary judgment because of disputed questions of material fact. In light of the denial of summary judgment to Cheche and Lubin, the simultaneous denial of Wolfinger's cross-motion does not evidence that Cheche and Lubin possessed probable cause to maintain *Case II.*

This conclusion is especially warranted in light of Judge Dunevant's eventual entry of judgment as a matter of law in favor of Wolfinger on the probable cause issue. Although the trial court's denial of a dispositive motion in some cases may support a probable cause determination, Judge Hilliard's ruling early in *Case II* was not sufficiently weighty to compel a finding as a matter of law that Cheche and Lubin had probable cause to maintain their lawsuit against Wolfinger.

¶ 70 The weakness of Wolfinger's claim against Strojnik in *Case I* likewise fails to demonstrate that Wolfinger lacked probable cause to bring and maintain that claim. Rather, as recognized by the Majority, *see* ¶ 29, *supra*, Wolfinger lacked probable cause only if he had no chance of success on the claim. *Smith*, 173 Ariz. at 297, 842 P.2d at 1310.

¶ 71 Cheche and Lubin did not present any facts to Judge Sticht in their summary judgment papers suggesting that Wolfinger had no chance of success on his claim against Strojnik, relying instead on Judge Hilliard's denial of summary judgment in *Case II* as evidence of probable cause to maintain the claim against Wolfinger. Moreover, the record contains evidence that Wolfinger had some prospect for success on the claim against Strojnik. *See* ¶ 12, *supra*. For these reasons, Cheche and Lubin were not entitled to summary judgment on the issue of probable cause, and I would therefore reverse and remand for further proceedings.